UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RYAN CHILCOTE,

                                    Petitioner,

v.

S. SHERMAN, Warden,

                                    Respondent.

Case No.:  3:17-cv-0061-GPC-PCL

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE:**

**FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

## I. INTRODUCTION

Petitioner Ryan Chilcote ("Petitioner"), before this Court *pro se* and *in forma pauperis*, filed his first amended petition for writ of habeas corpus ("FAP") on April 5, 2017. (Doc. 4.) Therein, Petitioner requests habeas relief based on four claims: (1) there is insufficient evidence to support a great bodily injury enhancement to Petitioner's conviction, (2) the trial court allowed inadmissible evidence to be presented to the jury, (3) the trial court committed a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding a Facebook video from the California Court of Appeal and all successive reviewing courts, and (4) Petitioner received ineffective assistance of counsel from his trial and appellate attorneys. (Id.)

The Honorable Gonzalo P. Curiel referred this matter to the undersigned Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule

72.1(c)(1)(d). After a thorough review of the petition, answer, exhibits, state court records, and state court decisions, the Court recommends **DENYING** relief.

## II. BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Summer v. Mata*, 449 U.S. 539, 550 (1981) (holding in part that findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness). Petitioner has not claimed these facts are inaccurate, and so this Court takes the following from the California Court of Appeal:

> [Petitioner] and his girlfriend, Cassandra Schaffner, lived together in an apartment. On May 3, 2014, [Petitioner], Schaffner and two friends were drinking and smoking marijuana throughout the day and evening. Schaffner became very intoxicated, and as a result she fell down several times, scraping her knees and hitting the back of her head on the bathtub.
>
> After their friends left for the evening, [Petitioner] and Schaffner got into an argument about [Petitioner]'s sexual comments to Schaffner's friend. As Schaffner later told a police officer and testified at the preliminary hearing, [FN2. Schaffner was not available during trial, and her preliminary hearing testimony was accordingly read to the jury.] [Petitioner] started to get physical with her during the argument. Schaffner tried to leave the apartment, but [Petitioner] would not let her. Schaffner eventually convinced [Petitioner] to let her go outside to smoke a cigarette, and when she got outside she started running. [Petitioner] grabbed her by the neck or arm and dragged her back inside the apartment.
>
> Schaffner ran toward the bathroom, and [Petitioner] started choking her while she was on the ground and[] leaning against the bathtub. Schaffner believes that she became unconscious while [Petitioner] was choking or hitting her, because she woke up on the ground in the living room. Neighbors in the apartment complex heard screaming and yelling and saw [Petitioner] drag Schaffner back into the apartment.
>
> Police responded to a neighbor's anonymous 911 call and observed Schaffner on the ground with blood on the carpet near her, and blood on [Petitioner]'s hands, neck and ear. Schaffner's injuries consisted of (1) facial injuries, including swelling of the entire right side of her face, a right eye that was swollen shut, bleeding from a laceration under her right eye, and

bruised lips; (2) injuries to her neck, including redness and bruising and handprint marks consistent with choking or strangulation; (3) lacerations on parts of her body other than her face, including a bleeding laceration on her collarbone and a laceration under her right ear; and (4) abrasions and scratches on her legs, some of which Schaffner reported were from being dragged into the apartment. When paramedics first responded, blood was coming from Schaffner's nose and mouth. The day after the incident, Schaffner's eye was still swollen shut, she had an open laceration on her face, her head and face were swollen, she had bruises on her neck, and she complained of pain.

When police responded to the apartment and initially questioned Schaffner in [Petitioner]'s presence, Schaffner stated that she was injured during a fight with a female friend. However, on the way to the hospital in the ambulance she disclosed that [Petitioner] had assaulted her.

[Petitioner] was charged with kidnapping ([Cal. Pen. Code] § 207, subd. (a)); corporal injury to a cohabitant ([Cal. Pen. Code] § 273.5, subd. (a)), with the further allegation that he personally inflicted great bodily injury ([Cal. Pen. Code § 1192.7, subd. (c)(8)), and did so under circumstances involving domestic violence ([Cal. Pen. Code] § 12022.7, subd. (e)); false imprisonment ([Cal. Pen. Code] §§ 236, 237, subd. (a)); attempting to dissuade a witness ([Cal. Pen. Code] § 136.1, subd. (b)(3)); and disobeying a court order ([Cal. Pen. Code] § 273.6, subd. (a)). The trial court bifurcated the trial of the count alleging that [Petitioner] disobeyed a court order and the prosecution subsequently dismissed that count.

The jury found [Petitioner] guilty of false imprisonment ([Cal. Pen. Code] §§ 236, 237, subd. (a)) and corporal injury to a cohabitant ([Cal. Pen. Code] §273.5, subd. (a)), with the further finding that he personally inflicted great bodily injury ([Cal. Pen. Code] §1192.7, subd. (c)(8)), and did so under circumstances involving domestic violence ([Cal. Pen. Code] § 12022.7, subd. (e)). [Petitioner] was found not guilty of kidnapping or of dissuading a witness.

The trial court sentenced [Petitioner] to five years in prison, which included a three-year term for the great bodily injury enhancement under section 12022.7, subdivision (e).

(Lodgment 6 at 2-4.)

After sentencing, Petitioner filed his direct appeal. In this direct appeal, Petitioner made a single argument: the trial court erred in allowing the sentencing enhancement for great bodily injury. (Lodgment 3 at 20.) Petitioner argued there was insufficient evidence

for this enhancement to be proper. (*Id.*) In furthering this argument, Petitioner presented his belief that "a finding of great bodily injury . . . should require 'proof of an injury that is even more severe than that required to establish "serious bodily injury" . . . ,' which applies to battery convictions." (Lodgment 6 at 7-8, citing Lodgment 3 at 25.) Petitioner's argument was based heavily on his reading of *People v. Santana*, 56 Cal. 4th 999 (2013), which differentiated between great bodily injury and serious bodily injury. But, the Court of Appeal rejected Petitioner's argument because *Santana* was clearly distinguishable, and therefore failed to lend support to Petitioner's argument. (Lodgment 3 at 23. Lodgment 6 at 8.) Petitioner exhausted his direct appeal by filing a petition for review with the Supreme Court of California. (Lodgment 7.) This petition was summarily denied. (Lodgment 8.)

After this rejection, Petitioner, proceeding *pro se*, filed his petition for writ of habeas corpus in the Superior Court of California on December 30, 2016. (Lodgment 9.) Therein, Petitioner first continued advancing his argument that the trial court erred in imposing an enhancement for great bodily injury because there was insufficient evidence. (*Id.* at 7.) Petitioner also included additional arguments in his petition which were not raised on direct appeal. Petitioner went on to argue the trial court allowed inadmissible evidence, and denied admissible evidence during his trial. (*Id.* at 9.) Next, Petitioner argues the prosecution and the trial court committed a *Brady* violation by withholding a Facebook video from the record, thereby disallowing reviewing courts to view the video. (*Id.* at 11.) Finally, Petitioner argues both his trial and appellate attorneys provided ineffective assistance of counsel. (*Id.* at 12.) Petitioner alleged his trial attorney did not cooperate with Petitioner or present the medical report from Schaffner's hospital visit on May 3, 2014, after the incident to show Schaffner had not in fact suffered great bodily injury. (*Id.*) Regarding his appellate counsel, Petitioner argues he received ineffective assistance of counsel because communication was lacking and appellate counsel declined to raise these additional arguments on direct appeal. (*Id.*)

//

The Superior Court rejected the petition for various reasons. The court rejected Petitioner's first argument because the issue was fully litigated during Petitioner's direct appeal. (Lodgment 10 at 2.) Petitioner did not demonstrate his petition fell within an exception to the general rule barring relitigation of issues already addressed on direct appeal. (*Id*.) The remainder of the petition was rejected because Petitioner failed to exhaust the additional arguments on his direct appeal. Furthermore, the court held even if Petitioner was not procedurally barred from habeas relief, his arguments would not warrant such relief because they were meritless. (*Id*. at 3-5.)

Petitioner then filed a petition for writ of habeas corpus in the Supreme Court of California.[1] In this petition, while some statements are superficially different from the petition filed in the Superior Court, the petition is substantively the same as that filed in the Superior Court. (Lodgment 11.) The Supreme Court summarily denied Petitioner's petition. (Lodgment 12.)

Before this court now is Petitioner's petition for writ of habeas corpus, based on the same grounds as filed in the Superior Court and Supreme Court of California, with minor alterations, which will be discussed where pertinent. (Doc. 4.)

### III. SCOPE OF REVIEW

A federal court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of state court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas courts may not "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S.

---

[1] According to the state court record lodged by Respondent, Petitioner did not file a petition for writ of habeas corpus in the Court of Appeals. There is no indication as to why Petitioner skipped over this level of review.

74, 76 (2005); *see Park v. California*, 202 F.3d 1146, 1149-50 (9th Cir. 2000) ("a violation of state law standing alone is not cognizable in federal court on habeas").

This FAP is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinary deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Y1st v. Nunnemaker*, 501 U.S.

797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Hines v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

## IV. DISCUSSION

In his FAP, Petitioner advances four arguments. (Doc. 4) First, Petitioner argues the trial court imposed an improper great bodily injury enhancement to Petitioner's infliction of corporal injury charge. Second, Petitioner argues the trial court improperly allowed inadmissible evidence into the trial by allowing both Schaffner's preliminary hearing testimony to be read in her absence as well as the testimony of Officer Kenneth Gray describing his interview with Schaffner at the police station the day after the incident. Third, Petitioner argues the trial court committed a *Brady* violation by withholding a Facebook video from the record, thereby depriving the reviewing courts of the evidence.[2] Fourth, Petitioner argues he received ineffective assistance of counsel from his trial and appellate attorneys.

//

---

[2] In Petitioner's petitions filed with the Superior and Supreme Courts of California, Petitioner alleged the prosecution had committed this violation. Here Petitioner makes the allegation solely against the trial court.

Respondent counters Petitioner's arguments in its answer to Petitioner's FAP. (Doc. 17-1.) First, Respondent argues the state courts reasonably applied precedent to Petitioner's argument claiming there was insufficient evidence supporting the great bodily injury enhancement. With regard to Petitioner's second and third arguments, Respondent contends Petitioner is procedurally barred from habeas relief on these grounds because the claims were not raised on direct appeal. Moreover, Respondent argues even if Petitioner was not procedurally barred these claims would fail because they are meritless. Fourth and finally, Respondent argues when ruling on Petitioner's ineffective assistance of counsel claim, the state courts reasonably and correctly applied *Strickland v. Washington*, 466 U.S. 668 (1984).

Only the Superior Court ruled on the merits of Petitioner's petition for writ of habeas corpus at the state level. (Lodgment 10.) The court denied Petitioner's first argument, finding there was certainly sufficient evidence to support a finding of great bodily injury. Secondly, the court found Petitioner's second and third claims were procedurally defaulted because Petitioner failed to raise these grounds on direct appeal. Finally the court held neither Petitioner's trial nor appellate counsels performed so deficiently as to be considered ineffective. Thus, the court denied Petitioner's petition on all grounds.

**a. There was sufficient evidence to support the enhancement for great bodily injury**

Petitioner first argues the trial court's imposition of the great bodily injury enhancement was improper. (Doc. 4 at 18.) This argument is based on Petitioner's belief the prosecution did not present evidence showing Petitioner inflicted such harm beyond a reasonable doubt.[3] At trial, no medical evidence was presented through either expert testimony or medical records. Petitioner suggests without such evidence, the jury could not have found him guilty beyond a reasonable doubt of inflicting great bodily injury

---

[3] Although Petitioner does not label the argument as such, this is a sufficiency of evidence argument.

upon Schaffner. Petitioner argues without the actual medical records and medical interpretations of Schaffner's injuries, the jury was left to speculate as to the severity of Schaffner's injuries based on photographs taken at the hospital on May 3, 2014, and the police station of May 4, 2014. Speculation, according to Petitioner, cannot be proof beyond a reasonable dough.

Additionally, Petitioner argues the lack of medical records presented in his trial was "suspicious," because if such records existed and included reports of Schaffner having suffered "great" or "severe" injuries, then the records would certainly be persuasive evidence for the prosecution. (Doc. 4 at 19.) However, because no records were introduced, Petitioner postulates the medical records did not in fact indicate such injuries existed. (*Id*. at 4-5, "Is it because the victim did not suffer from great injury . . . and that is what's stated on the medical records . . . ?") Petitioner ultimately argues based on the omission of these records, the enhancement for great bodily injury was not supported by proof beyond a reasonable doubt. (*Id*. at 22.)

Respondent counters Petitioner's argument in a two parts. First, Respondent contends Schaffner's injuries were in fact extensive enough to warrant a classification of great bodily injury. Schaffner had bruises, swelling, and lacerations on her face, neck, and legs. These injuries, according to the Respondent are undoubtedly sufficient to prove Petitioner inflicted great bodily injury upon Schaffner. Second, Respondent argues the allegedly omitted medical records were simply unnecessary to prove the enhancement. Instead of presenting the medical records to illustrate Schaffner's injuries, the prosecution in this case introduced photographs of Schaffner's injuries as well as the testimony of both Officer Gray, who interviewed Schaffner the night of the incident and the next day, and Schaffner's father, who also saw Schaffner at these times. Respondent contends these two factors render Petitioner's claim on this ground meritless.

While in his direct appeal, Petitioner made an argument based on a heightened standard required to prove great bodily injury, the Court of Appeal rejected that argument and went on to discuss the sufficiency of evidence supporting the great bodily injury

enhancement. (Lodgment 6 at 7.) The Court of Appeal found "Schaffner's injuries were consistent with the type of injuries described" by precedent "as constituting great bodily injury." (*Id.*) Multiple cases were cited therein which presented similar injuries as those inflicted upon Schaffner where the various California courts had found great bodily injury. The Court of Appeal therefore denied Petitioner's claim that the great bodily injury enhancement was improper. (*Id.*)

## 1. Governing Law

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *accord Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Thus, a state prisoner who alleges the evidence introduced at trial was insufficient to support the jury's findings states a cognizable federal habeas claim. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). The prisoner, however, faces a "heavy burden" to prevail on such a claim. *Juan H.*, 408 F.3d at 1274, 1275 n.13. The question is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

When determining the sufficiency of the evidence, a reviewing court makes no determination of the facts in the ordinary sense of resolving factual disputes. *Sarausad v. Porter*, 479 F.3d 671, 678 (9th Cir. 2007), *vacated in part*, 503 F.3d 822 (9th Cir. 2007), *rev'd on other grounds*, 555 U.S. 179 (2009). Rather, the reviewing court "must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995); see also *Jackson*, 443 U.S. at 319, 324, 326.

In post-AEDPA cases, where, as here, a state court has issued a reasoned decision rejecting a claim of insufficient evidence under a standard that is not "contrary to" *Jackson*, a reviewing federal court applies an additional layer of deference. *Juan H.*, 408

F.3d at 1274. "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable." *Cavazos v. Smith*, 565 U.S. 1 (2011) (*per curiam*); *see also Juan H.*, 408 F.3d at 1275 n.13. This "double dose of deference . . . can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011); *see also Coleman v. Johnson*, 566 U.S. 650 (2012) (*per curiam*) ("We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference").

A state court's resolution of an insufficiency of evidence claim is evaluated under 28 U.S.C. § 2254(d)(1), not § 2254(d)(2). *Emery v. Clark*, 643 F.3d 1210, 1213-14 (9th Cir. 2011) ("When we undertake collateral review of a state court decision rejecting a claim of insufficiency of the evidence pursuant to 28 U.S.C. § 2254(d)(1) . . . we ask only whether the state court's decision was contrary to or reflected an unreasonable application of *Jackson* to the facts of a particular case"); *Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) ("The pivotal question, then, is whether the California Court of Appeal . . . unreasonably applied *Jackson* in affirming Petitioner's conviction for second-degree murder"); *Boyer*, 659 F.3d at 965 ("[T]he state court's application of the *Jackson* standard must be 'objectively unreasonable' to warrant habeas relief for a state court prisoner"); *Juan H.*, 408 F.3d at 1275 ("[W]e must ask whether the decision of the California Court of Appeal reflected an 'unreasonable application of' *Jackson* and *Winship* to the facts of this case") (citing 28 U.S.C. § 2254(d)(1)).

In adjudicating an insufficiency of the evidence claim, a federal habeas court "look[s] to [state] law only to establish the elements of [the crime] and then turn[s] to the federal question of whether the [state court] was objectively unreasonable in concluding that sufficient evidence supported [the conviction]." *Juan H.*, 408 F.3d at 1278 n.14. In determining whether the evidence was sufficient, a federal court must follow the California courts' interpretation of state law. *Bradshaw v. Richey*, 546 U.S. 74 (2005).

The challenged injury-based sentencing enhancements are found in California Penal Code section 12022.7(a). Per section 12022.7(a), a defendant may be sentenced to an additional and consecutive term of three years if the jury finds he personally inflicted "great bodily injury" upon the victim of a crime. California Penal Code section 12022.7(f), in turn, defines "great bodily injury" as "significant or substantial physical injury."

### 2. *Application*

In his direct appeal, Petitioner made a slightly different argument on the great bodily injury enhancement, though still ultimately arguing there was insufficient evidence to prove the enhancement. There, Petitioner argued the extent of the injuries inflicted to prove serious bodily injury or great bodily injury should be greater than the extent of injuries required to prove battery. While the Court of Appeal rejected this contention, the Court of Appeal also discussed the extent of Schaffner's injuries and found they satisfied the requirement to show great bodily injury. The Court of Appeal reasoned as follows:

> Although a decision as to whether the victim suffered significant or substantial physical injury is ultimately a question for the jury (*People v. Cross* (2008) 45 Cal.4th 58, 64), case law discusses the circumstances under which the evidence sufficiently supports a jury's finding of great bodily injury as defined in section 12022.7, subdivision (f). As one recent case explained, "California case law reveals that some physical pain or damage, such as lacerations, bruises, or abrasions is sufficient for a finding of 'great bodily injury.'" (*People v. Washington* (2012) 210 Cal.App.4th 1042, 1047.) There is no requirement "that the victim suffer 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function." ([*People v.*] *Escobar*,[] 3 Cal.4th [740,] 750.)
>
> Thus, great bodily injury has been found based on evidence of "extensive bruises and abrasions over the victim's legs, knees and elbows, injury to her neck and soreness in her vaginal area of such severity that it significantly impaired her ability to walk" (*Escobar*, *supra*, 3 Cal.4th at p. 750), and based on evidence that the victim had "multiple contusions over various portions of her body," swelling, severe discoloration, and still felt pain and had visible injuries the next day (*People v. Jaramillo* (1979) 98 Cal.App.3d 830, 836). Many other authorities reach similar conclusions,

finding evidence of abrasions, lacerations and bruises sufficient to constitute great bodily injury. (*See, e.g.*, *People v. Bustos* (1994) 23 Cal.App.4th 1747, 1755 ["multiple abrasions, lacerations, and contusions suffered by the victim" from a hit to the face and struggle on the floor constituted great bodily injury as defined in §12022.7]; *People v. Sanchez* (1982) 131 Cal.App.3d 718, 733 [the victim suffered multiple abrasions and lacerations on her back and neck and had serious swelling and bruising of her right eye and a markedly swollen left cheek]; *People v. Mixon* (1990) 225 Cal.App.3d 1471, 1489 [great bodily injury inflicted when victim was strangled until she nearly passed out leaving a purple line on her neck, her eyes swelled and her nose bled, she suffered a blow to her head that produced a bump, and her eyes were red and her face was bruised].)

Here, Schaffner's injuries were consistent with the type of injuries described in the case law as constituting great bodily injury. Specifically, Schaffner suffered lacerations on her face, collarbone and under her ear, had a severely swollen face and eye, had bruising on her neck, and had abrasions on her legs from being dragged on the ground. Further, those injuries persisted until at least the next day and she continued to be in pain. Accordingly, we conclude that substantial evidence supports the jury's finding that [Petitioner] personally inflicted great bodily injury.

(Lodgment 6 at 6-7.) The question for this Court is whether rational jurors could reach the conclusion that the jurors in Petitioner's case reached. *See Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991).

Here, Schaffner presented with cuts on her face, collar bone, and under her ear. She had bruising on her neck from Petitioner strangling her, which led to a momentary loss of consciousness. Finally, Schaffner had multiple abrasions on her legs from being dragged by Petitioner back into the apartment they shared. Upon arriving at the scene, Officer Gray observed Schaffner lying in a pool of what looked like blood while blood came from her nose and mouth. The day after the incident, Schaffner's eye remained swollen shut and Schaffner complained of continued pain.

Despite all of these injuries, Petitioner argues because Schaffner allegedly recovered in less than two weeks and was not "prevent[ed] from [completing] any daily life activities," Petitioner did not inflict great bodily injury. The Court disagrees. Schaffner's collective injuries clearly prove Petitioner inflicted great bodily injury upon

Schaffner. *See Pina v. Biter*, 2015 U.S. Dist. LEXIS 28607 (C.D. Cal. Feb. 2, 2015) (finding sufficient evidence for a great bodily injury enhancement where the victim suffered abrasions on her face, multiple bruises on her face, a cut on her lip requiring stitches and resulting in permanent disfigurement, and dizziness and incoherence in the aftermath of the attack); *Stewart v. Cox*, 2014 U.S. Dist. LEXIS 178077 (C.D. Cal. Dec. 29, 2014) (finding sufficient evidence of great bodily injury where the victim's eye became "really swollen" and "black," and remained this way "for two to three weeks"; the victim had headaches for about two weeks afterwards; and the victim experienced immediate pain and dizziness from the attack). Based on the evidence in this case, the Court concludes any rational jury could have, and would have, reached the same conclusion, finding Petitioner did inflict great bodily injury upon Schaffner.

Petitioner's argument based on the omission of the medical records is similarly meritless. Although Schaffner's medical records were not introduced at trial, medical records of hospitalization and treatment are not required to show great bodily injury. See People v. Perez, No. E059991, 2015 Cal. App. Unpub. LEXIS 1624 at *3 (Cal. Ct. App. Mar. 4, 2015) (concluding that evidence of the victim's broken nose constituted great bodily injury even without the support of medical records); see also Carreon v. Long, 2014 U.S. Dist. LEXIS 39448 at *50-54 (where the court held the testimony of the victim and the nurse who treated the victim was "itself evidence of [the victim's] injuries regardless of any medical records"). During Petitioner's trial, instead of medical records, the prosecution introduced testimony of Nicholas Pinson, a firefighter-paramedic who treated Schaffner on the way to the hospital. Pinson testified Schaffner presented with "soft tissue swelling to the face[,] [e]yes [that] were swollen shut[,] [l]ips [that] were swollen[, and] blood coming from [her] nose and mouth." (Lodgment 2 at 154.) Additionally, the prosecution presented Schaffner's preliminary hearing testimony, in which Schaffner described her injuries. (Lodgment 2 at 300, "he dragged me inside the house," "he grabbed by neck"; at 301, "he came in[to the bathroom] with me and started choking me. . . I think I went unconscious, because I remember waking up on the ground

14

in the living room"; at 305, "my nose was bleeding and my mouth was bleeding and my eye, like, split open. . . I had blood on my shirt and my shorts.") Schaffner also testified to being struck in the face by Petitioner. (*Id*. at 302.) Both Pinson and Schaffner's testimonies are evidence themselves and act in place of any medical records Petitioner claims should have been introduced.

By presenting testimony from Pinson and Schaffner herself, as well as photographs taken of Schaffner after the incident, the prosecution presented a large amount of evidence of Schaffner's injuries. Considering the severity of Schaffner's injuries, as testified to and shown in in photographs, the injuries clearly constitute great bodily injury. Given this evidence and the strength of it, a jury presented with such could, and would, reach the conclusion that Petitioner inflicted great bodily injury upon Schaffner. Therefore the Court of Appeals' rejection of this claim was not contrary to, nor an objectively unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d). Accordingly, habeas relief on this claim is **DENIED**.

**b. The trial court properly admitted and redacted evidence during Petitioner's trial**

Next, Petitioner argues during his trial, the trial court improperly allowed inadmissible evidence, which rendered his trial unfair. (Doc. 4 at 25.) Petitioner argues three instances of evidence being presented incorrectly. First, Petitioner contends the May 4, 2014 interview with Schaffner, conducted at the police station by Officer Gray with Schaffner's father present, was inadmissible because Schaffner's father "became active in his daughter's interview and then even answered the bulk of the questions." (*Id*. at 26.) This, according to Petitioner, renders Officer Gray's testimony about Schaffner's statements in this interview, and any other information gleaned from this interview, inadmissible. Second, Petitioner argues Schaffner's testimony from the preliminary

//

//

//

hearing was not appropriate to be reenacted[4] because Schaffner had later executed a jurat which included statements that almost entirely contradicted her prior testimony. Petitioner believes because the jurat was available, Schaffner's previous testimony should not have been admitted. Third and finally, Petitioner contests the redaction of Schaffner's jurat. At trial, Schaffner's jurat was read into the record by Petitioner's trial counsel. However, what was read into the record was the end result of the trial court redacting portions of the letter, finding them irrelevant. Petitioner believes these redactions violated the rule of completeness. (Doc. 4 at 28.)

Respondent rebuts this claim by arguing a procedural default has occurred because Petitioner did not raise the claim in his direct appeal. Furthermore, the claims are based on independent and adequate state law procedural rules, thus barring federal habeas relief. Despite this, Petitioner has not provided any information or argument that his claim falls within a recognized exemption to the procedural bar rule.

This claim was not raised on direct appeal. In exhausting his state remedies, Petitioner did not file a petition for writ of habeas corpus in the Court of Appeal and the Supreme Court of California summarily denied Petitioner's full petition. Thus, the only review this claim has received is from the Superior Court. (Lodgment 10.) This Court looks through to the highest reasoned decision. There, the Superior Court found the claim was "not cognizable on habeas corpus" because habeas relief is not appropriate to review claims based on trial court rulings or procedural errors. (*Id*. at 3.)

*1. Governing Law*

In reviewing a state court adjudication, a federal habeas court looks to the last reasoned state decision as the basis for the state court's final judgment. *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S.

---

[4] Because Schaffner was not available at trial to testify, her preliminary hearing testimony was reenacted (read into the record) by the prosecution, Petitioner's trial counsel, and a member of the District Attorney's office reading for Schaffner.

797, 803-804 (1991); *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)), *cert. denied*, 538 U.S. 919 (2003). When the state court's adjudication of a claim on the merits does not articulate a rationale, a federal habeas court must make an "independent review" of the record in order to determine whether the state court's decision on the claim was contrary to or an unreasonable application of controlling law. *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000); *see also Allen v. Ornoski*, 435 F.3d 946, 955 (9th Cir. 2006) ("[T]he independent review undertaken under *Delgado* is not the equivalent of *de novo* review, but rather is a style of review which views the state court decision through the objectively reasonable lens ground by *Williams* [*v. Taylor*, 529 U.S. 362 (2000)]. In addition, although [the Court] independently review[s] the record, [the Court] still defer[s] to the state court's ultimate decision." (internal quotation marks and citations omitted)). Here, however, it is apparent that Petitioner's claims were rejected by the state courts on procedural grounds rather than on the merits. *De novo* review of these claims is therefore required. *See Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) ("*De novo* review, rather than AEDPA's deferential standard, is applicable to a claim that the state court did not reach on the merits." (citation omitted)); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (citations omitted); *see also Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004) (holding that AEDPA phrase "adjudicated on the merits" means that state court has reached decision "on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits").

A federal court may not generally grant federal habeas relief based on errors of state law. *See Estelle*, 502 U.S. at 68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") A claim of state law error may warrant habeas relief if "the state court's admission of this evidence violated the petitioner's due process right to a fair trial under the Constitution." *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990); *see also Estelle*, 502 U.S. at 70. The reviewing court must determine "whether the admission of the evidence so fatally infected the proceedings as

to render them fundamentally unfair." *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991); *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 897 (9th Cir. 1996) ("While a petitioner for federal habeas relief may not challenge the application of state evidentiary rules, he is entitled to relief if the evidentiary decision created an absence of fundamental fairness that 'fatally infected the trial.'"), quoting *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986).

The question before this Court, therefore, is whether the trial court's admission of Officer Gray's testimony as well as Schaffner's preliminary hearing testimony, and the redaction of Schaffner's jurat rendered Petitioner's trial fundamentally unfair. The short answer is it did not.

### 2. Officer Gray's testimony

At trial, Officer Gray's testimony included a recap of the interview he conducted with Schaffner the night of the incident and the following day. Petitioner argues this testimony about any statements made or information learned from the second interview on May 4, 2014, was inadmissible. (Doc. 4 at 26.) This contention is based on Petitioner's belief that Schaffner's father "has a significant influence on his daughter and perhaps [is] intimidating to her." (*Id.*) Petitioner points out that during this second interview, "Shawn Schaffner answered questions [posed about] facts of a criminal case that he was not part of or witness to[]." (*Id.*) The theme of Petitioner's argument that this testimony was inadmissible is that Schaffner was coerced or otherwise intimidated by her father into altering her recollection of the incident with Petitioner, and that when Schaffner faltered, Schaffner's father dominated the interview, telling the story Schaffner's father wanted Petitioner to be charged with.

This argument misrepresents what occurred in the interview on May 4, 2014 with Schaffner and her father. The transcript of the interview does indicate Schaffner's father became active during the interview; however, Schaffner's father does not make any statements regarding the May 3, 2014 incident. Instead, Schaffner's father was a passive participant. He provided answers to questions about prior incidents where police had

been called because Petitioner had become violent. (Lodgment 1 at 75-77.) While Officer Gray was finishing the substantive portion of the interview with Schaffner, Officer Gray asked Schaffner if she remembered Petitioner throwing anything at her. (*Id*. at 79.) Petitioner responded she did remember, but nothing had been thrown at her on May 3; Schaffner recalled Petitioner had thrown a perfume bottle at her two nights prior to May 3. (*Id*. at 81.) Here, when assigning her injuries to this earlier event, Schaffner's father suggested "those two marks" on Schaffner's back may be among those injuries resulting from the perfume bottle being thrown. (*Id*.) Lastly, Schaffner's father also spoke during the close of the interview when Officer Gray began discussing Schaffner's future, *i.e.*, where she would live, how she would get her belongings from the residence she shared with Petitioner and Petitioner's father, and where she could take her dog. (*Id*. at 79-82.)

As is quite clear from this transcript, Schaffner's father, although present during the interview and arguably participating, did not make any statements purporting to know what had occurred the previous night between Petitioner and Schaffner. Instead, Schaffner's father provided background information to Officer Gray and support to his daughter, the victim of Petitioner's attack. Thus, no information relevant to the May 3, 2014 incident which Officer Gray learned during this interview with Schaffner was actually learned from Schaffner's father, as argued by Petitioner.

Furthermore, if Petitioner felt the interview had been so tainted, and there was merit to this belief, Petitioner's trial counsel could have elicited such information during his cross examination of Officer Gray. In fact, Petitioner's trial counsel did somewhat pursue this line of questioning during cross examination. (Lodgment 2 at 212-13.) Trial counsel questioned Officer Gray about why Schaffner's father had been allowed to be present during the interview, (Id. at 212, "Q: Why was her father permitted to be present during this interview? A: She told me she would feel comfortable with him in there."), whether Schaffner's father's presence violated protocol, (Id. at 213, "Q: In this case would it not have been a violation of protocol, . . . , to have the alleged victim's father present while . . . , Ms. Schaffner is making a statement? A: I'm not aware of it being a

3:17-cv-0061-GPC-PCL

violation of a protocol we have."), and whether Schaffner's father became an "active participant" in the interview (Id. "Q: You obviously noted that he became an active participant in the interview? A: As in him talking? Q: Yes. A: Yes, I did hear him talking. That's correct."). During this cross examination, Petitioner's trial counsel did not explore the impact of Schaffner's father being present or a change observed in Schaffner's demeanor based on her father's presence, but rather focused solely on his speaking during the interview. Once Officer Gray admitted Schaffner's father did speak during the interview, Petitioner's trial counsel moved on to the next topic of his cross examination. Thus, Petitioner had a fair chance to cross examine Officer Schaffner and elicit any information which would lead the jury to believe Schaffner's second interview had been influenced by her father's presence. Therefore, use of this interview as evidence to convict Petitioner was not fundamentally unfair.

### 3. Schaffner's preliminary hearing testimony

Petitioner next argues Schaffner's preliminary hearing testimony was inadmissible because: (1) Schaffner's later executed jurat contradicts the earlier testimony, (2) the phone call between Schaffner and her father when Schaffner asked her father why he was "doing this" was on the same date the jurat was executed, and (3) Schaffner's father "perhaps intimidate[ed] and [was] the cause of the prelim[inary hearing] testimony." (Doc. 4 at 28.) Petitioner further argues the trial court should have either located Schaffner in order to compel testimony from her at trial, or in the alternative, should have allowed only the jurat to stand as Schaffner's testimony rather than her preliminary hearing testimony. (*Id.*)

The Supreme Court has never held that the admission of a witness's preliminary hearing testimony violates the Confrontation Clause, when the witness is unavailable to testify at trial and the defendant had the opportunity to cross-examine the witness at the preliminary hearing. Although the Supreme Court did observe in *Barber v. Page*, 390 U.S. 719 (1968) that "[a] preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more

limited one of determining whether probable cause exists to hold the accused for trial," the Supreme Court also recognized in *Barber* that "there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable." *See id*. at 725-26. Moreover, in a subsequent decision, *California v. Green*, 399 U.S. 149, 165-66 (1970), the Supreme Court observed that, where the defendant's counsel did not appear to have been significantly limited in any way in the scope or nature of his cross-examination of a witness at the preliminary hearing, if the witness was unavailable, the Confrontation Clause would not have been violated by admitting her preliminary hearing testimony. Then, in *Ohio v. Roberts*, 448 U.S. 56, 70 (1980), the Supreme Court held that defense counsel had sufficient opportunity to cross-examine a witness at the preliminary hearing where counsel's questioning "clearly partook of cross-examination as a matter of form" and "comported with the principal purpose of cross-examination," *i.e.*, to challenge the witness's veracity, the accuracy of the witness's perceptions, and the meaning of the witness's language. The Supreme Court further observed that defense counsel "was not significantly limited in any way in the scope or nature of his cross-examination." *See id*. at 71-72 (citation and internal quotations omitted).

Substantively, Petitioner's arguments rely upon his inability to show Schaffner's later executed jurat was more reliable than her previous preliminary hearing testimony. During trial, though, Petitioner's trial counsel introduced the jurat into evidence by reading the redacted version of the letter to the jury. (Lodgment 2 at 380-81.) Thus, both statements were in fact introduced into evidence and presented to the jury for consideration. Despite Petitioner's contention, the jury ultimately is the deciding body in determining which statement is more credible, or if either are credible at all. *United States v. Preciado-Gomez*, 529 F.2d 935, 942 (9th Cir. 1976) ("credibility is an issue for the jury").

//

The jury in Petitioner's case was instructed regarding both witness credibility and how to interpret inconsistent statements. Given the numerous inconsistent statements given by Schaffner, including those made in her preliminary hearing testimony and later jurat, the jury was instructed as follows:

> Now, you alone are the judges of the believability or the credibility of the witnesses that we present you. First and foremost we want you to use your common sense in evaluating the testimony of a witness. You can consider anything that has a tendency in reason to prove or disprove the truthfulness of a witness, including, but not limited to the following: how well could they see, hear, or otherwise become aware about which the witness testified? How was the witness able to remember and describe to you what took place out there? What was the witness's behavior while testifying? Did the witness appear to understand questions and answer them for you directly? Was the witness's testimony influenced by a factor such as a bias, interest or a desire to favor one side or the other in our law enforcement?
>
> What was the witness's attitude about testifying and about the case in general? Did the witness make a prior statement that was either consistent or inconsistent with his or her testimony at trial? How reasonable was the testimony when you consider it with all the other facts we presented to you? Was there evidence that proved or disproved a fact testified to by a witness? And did a witness admit to you being untruthful?
>
> Now, you can't reject testimony because of an inconsistency or conflict. As I told you before, you've got to consider whether or not that inconsistency or conflict pertains to something important in our case or only a trivial detail. Again, two people are often going to see and hear things differently.
>
> [. . .] If you decide that a witness has deliberately lied to you about something significant in our case, you should consider not believing anything that witness has to say.
>
> Or if you think a witness lied to you about some things but was truthful about others, you can accept the part you find to be truthful and reject the rest.

(Lodgment 2 at 439-40.)

Petitioner's first contention as to why Schaffner's preliminary hearing testimony is inadmissible is based on the inconsistency of the statement with Schaffner's jurat. This argument fails because as discussed, both statements were properly presented to the jury,

1   and the jury was correctly instructed to use the inconsistent statements as it saw

2   appropriate and assign credibility accordingly. The trial court did not err in allowing the

3   preliminary hearing testimony to be presented at trial, and did not deprive Petitioner of a

4   right to present the later inconsistent statement made via the jurat. Petitioner cites no

5   legal authority which supports his contention that the allegedly less reliable statement

6   should not be admitted in favor of the allegedly more reliable statement. Because the jury

7   was given both statements, the jury could give each the weight deemed appropriate and

8   reach a verdict based on such evidence. There is no legal authority supporting the

9   conclusion that the preliminary hearing testimony should not have been admitted. Thus,

10  this argument is meritless.

11      Petitioner's second contention regarding this testimony was that Schaffner called

12  her father the same day the jurat was executed and asked her father why he was "doing

13  this." (Doc. 4 at 28.) Petitioner argues this phone call enhances the credibility of the jurat

14  and the statements made therein. Specifically, within the jurat, Schaffner claims her

15  father never liked Petitioner and thus, "fueled by his hatred," was acting "as the

16  mouthpiece for [her] case with the District Attorney's Office." (Lodgment 2 at 381.) The

17  combination of this statement within the jurat and Schaffner's phone call to her father,

18  Petitioner argues, show the jurat was both relevant and prove "Shawn Schaffner has

19  impacted this trial in numerous ways, and due to this, . . . ha[s] made the Petitioner's trial

20  unfair." (Doc. 4 at 27.)

21      This argument is also based on the credibility of a statement. Petitioner is

22  presenting evidence of the phone call in order to show the jurat is in fact more credible

23  than the preliminary hearing testimony because Schaffner's call with her father

24  corroborates her statements in the jurat. If Petitioner felt this was true, Petitioner should

25  have presented this during his trial through his trial counsel. Despite this opportunity,

26  trial counsel did not cross examine Schaffner's father about either the phone call or his

27  alleged hatred for Petitioner. Instead, the testimony was elicited on direct examination by

28  the prosecution. (Lodgment 2 at 254 (where Schaffner's father stated he had "one twenty-

23

second call" with Schaffner on or around October 15, "that was just to ask why I was doing this").) Even though this evidence was elicited during Schaffner's father's testimony, Petitioner's trial counsel did not pose any further questions about this phone call. Petitioner's trial counsel had a second opportunity to address this corroboration and bias in closing arguments; however, trial counsel only discussed the jurat briefly, in the context of the numerous conflicting statements Schaffner gave. (Id. at 499.)

In light of the multiple statements given by Schaffner to investigators, medical personnel, her friends, and the court, the jurat's credibility would not have been noticeably increased by presenting the similarities between the phone call and the jurat. As noted above, preliminary hearing testimony is admissible when the declarant is unavailable, as Schaffner was deemed in this case. Petitioner was allowed to present Schaffner's jurat, which contradicted Schaffner's preliminary hearing testimony. Because Petitioner was allowed to present this inconsistent statement, Petitioner's trial was not fundamentally unfair.

Petitioner lastly argues because Schaffner was living with her father at the time of the preliminary hearing, the testimony was coerced or otherwise influenced by her father, rendering the testimony inadmissible. Petitioner points out that when Schaffner testified at the preliminary hearing, wherein she alleged Petitioner had committed the crimes charged, Schaffner was living at home with her father who Petitioner believes had coerced his daughter to lie about the May 3, 2014 incident. Conversely, when Schaffner executed the jurat, wherein she recanted and claimed Petitioner was not the cause of her injuries, Schaffner was no longer living with her father. Petitioner claims Schaffner changed her story based on where she was living at the time.

Again, this is something Petitioner should have brought up during the cross examination of Schaffner at the preliminary hearing. At that point, if Petitioner believed Schaffner's father was the reason Schaffner was accusing Petitioner of these crimes, Petitioner should have requested his trial counsel cross examine Schaffner on that point.

//

Instead, Petitioner's trial counsel cross examined Schaffner solely about her multiple conflicting statements. (Lodgment 2 at 314-319.)

Overall, none of Petitioner's reasons for claiming the preliminary hearing testimony was inadmissible are valid because they are all merely attacks on the credibility of the statement. Petitioner should have raised these arguments through cross examination. The preliminary hearing testimony was therefore admissible, and the trial court was correct in allowing it to be reenacted at trial, based on Schaffner's status as unavailable. Moreover, because the trial court allowed petitioner to introduce the redacted jurat to contradict the preliminary hearing testimony, Petitioner was adequately able to attack Schaffner's credibility. Thus, Petitioner's trial was not fundamentally unfair. The preliminary hearing testimony was admissible, and the trial court was correct in allowing it to be reenacted at trial based on Schaffner's status as unavailable. Therefore, Petitioner's trial was not fundamentally unfair.

*4. Redaction of Schaffner's jurat*

Finally, Petitioner argues the trial court violated the "rule of completeness" by redacting Schaffner's jurat, and only providing the redacted version thereof to the jury. (Doc. 4 at 28.) Schaffner's jurat, as read to the jury and attached to Petitioner's FAP, reads as follows:

> I'm writing this letter for further clarification in the case against [Petitioner], the State of California D.A. office, and Cassandra Schaffner.
> On the night of the incident, as I have stated before, I had very little unobstructed memory of the events that night, because I was extremely intoxicated. Originally I thought that my injuries were inflicted by [Petitioner], and following the incident I was kept very sheltered by my family. I no longer was in contact with my friends through facebook, cell phones, etc. My dad, I guess fueled by his past hatred for [Petitioner], has been the mouth peice [sic] for my case with the District Attorney['s] Office. I have on so many occasions through this case been threatened by my dad of my family disowning me if I don't follow through with the case, because I expressed doubt of the events and how they happened.
> [My recollection] was extremely obscured because of the fact I was so intoxicated with alcohol and very potent cannabis and in which I consumed

with my friends throughout the night. Following the prelim[inary hearing], I for the first time against my parents will, contacted my friends and the outside world where I felt I had some confirmation for the first time that facts that came out in the prelim[inary hearing] now put this night into context of what really happened that night.

I know for a fact that [Petitioner] did not commit the crime he has been charged with. Although I am now alone, I feel more at peace than I would by assisting in a false and unjust pursuit of lies.

If I testify, I will expose all of the non-truths to the jury!

(Doc. 4 at 54-55. Lodgment 2 at 380-82.)

Outside the presence of the jury, the trial court went through the jurat and redacted portions that were found irrelevant to the charges against Petitioner. (Lodgment 2 at 344-350.) In the redacted portions of the jurat, Schaffner claims she spoke with the District Attorney's office and informed the prosecuting attorney she no longer believed Petitioner had committed the crimes he was charged with. (*Id* at 347.) Schaffer claimed the prosecuting attorney responded that "'if [she] did not follow through with [the trial] even though it's not true, if [she] did not follow through with it, he would arrest [her] and charge [her] with a crime." (*Id*.) Schaffner made many negative and accusatory statements about the District Attorney, alleging she was a victim of a "personal vendetta" and was "terrified of being arrested." (*Id*. at 347-48.)

The trial court redacted this entire allegation and all statements relating thereto because the trial court found the allegation to be "an absolute lie" based on the court's previous dealings with the prosecuting attorney, extremely inflammatory, and ultimately irrelevant to the charges against Petitioner. (*Id*. at 347, 349.)

The federal rule of completeness requires that a full document or set of documents be introduced "when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172, 102 L. Ed. 2d 445, 109 S. Ct. 439 (1988). To avoid any misunderstanding or distortion, "the material required for completeness is ipso facto relevant and therefore admissible." *Id*. California has a similar

rule requiring "where part of a . . . writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party . . . which is necessary to make it understood." Cal. Evid. Code § 356. Both evidentiary rules hold essentially the same requirement: if a writing is introduced by one party, the other party can require the remainder of the document be introduced in order to avoid any misunderstandings.

In this case, no such misunderstanding resulted. The redacted portions of the jurat did not include any logical links required to reach particular conclusions from the redacted version presented to the jury. Instead, the redacted portion was only pertaining to Schaffner's allegations against the District Attorney's office, all of which were irrelevant to the case at hand. Furthermore, the rule of completeness pertains to an "adverse party" requesting the remainder of the document be introduced. See Fed. Evid. R. 106; Cal. Evid. Code § 356. In this case, Petitioner's trial counsel introduced the jurat, as redacted. (Lodgment 2 at 380-81.) As such, the prosecution was the adverse party with the right to assert the rule of completeness required the rest of the jurat be introduced. Given these roles, the rule of completeness clearly was not violated.

Overall, each of Petitioner's arguments that the trial court allowed inadmissible evidence into Petitioner's trial is meritless. Petitioner has not shown any of the introduced evidence was in fact inadmissible; rather, Petitioner at most has shown the evidence introduced may not have been as credible as the jury believed. This, however, is not grounds for relief. *Preciado-Gomez*, 529 F.2d at 942. Petitioner has not shown any evidence was introduced which rendered his trial fundamentally unfair, as required for the Court to grant the FAP. It follows then that habeas relief must be **DENIED** on this ground.

### c. There was no *Brady* violation committed by the trial court

Petitioner next argues the trial court committed a *Brady* violation by withholding a Facebook video from the record, thereby depriving the reviewing courts of the ability to view the video. (Doc. 4 at 29.) During Petitioner's trial, Schaffner, who was determined to be unavailable, uploaded a video to her Facebook profile where she discussed the

ongoing trial. (Lodgment 2 at 374-375.) Petitioner's trial counsel proffered the video into evidence and the trial court denied the request. (Id. at 376.) However, the trial court did mark the video as an exhibit "so a reviewing court has an opportunity to see what was said and when it was said." The exhibit list for Petitioner's trial shows the Facebook video was submitted by defense counsel on November 17, 2014, but also indicates the same exhibit was not received into evidence. (Lodgment 1 at 139-140.)

Respondent again argues the claim is procedurally barred. (Document 17-1 at 11.) Additionally, Respondent goes on to argue the claim must fail because there is no evidence of suppression. Mistakenly, however, Respondent perceived Petitioner's argument as being that the prosecution withheld the video, not the trial court. (Id. at 12.)

The Superior Court is helpful in providing an understanding of the proceedings regarding this Facebook video at Petitioner's trial. Specifically, the court states:

> that notation does not mean the exhibit was not received by the court; it means the exhibit was not received into evidence, so it should not be provided to the jury during deliberations. Thus, the court record shows the Facebook video is an exhibit with the court and, thus, was available to the appellate court, if requested.

(Lodgment 10 at 3.) Based on this clarification by the Superior Court, it is clear the video exists in the record, but simply was not received into evidence during trial in order to keep the jury from viewing and considering the video. Thus, the video remains a part of the case file and available for reviewing courts to view if desired.

The United States Supreme Court held in *Brady* "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87. To show a *Brady* violation, a party must show the three prong test has been satisfied: the evidence must be favorable to the accused, suppressed by the State, and prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999).

*//*

In applying the three prong test set out by *Brady*, the Petitioner's claim fails in two respects. This evidence, first, was not suppressed. Instead, the video was not introduced into evidence in such a way as to ensure the jury could not view the video, as ordered by the trial court. (Lodgment 2 at 376.) Secondly, the evidence was not allegedly suppressed by the prosecution. *Brady* does not apply to any alleged suppression by the trial court, as Petitioner claims has occurred. Because this situation is clearly outside the realm of *Brady*, Petitioner's claim must fail. Accordingly, habeas relief on this ground is **DENIED**.

### d. Both trial and appellate counsel were effective in representing Petitioner

Petitioner's final argument is that he received ineffective assistance from both trial and appellate counsel. (Doc. 4 at 31.) As to his trial counsel, Petitioner alleges trial counsel has performed, and continues performing, deficiently because Petitioner's trial counsel has not produced the case discovery files to Petitioner, upon Petitioner's request. Specifically, Petitioner wishes to obtain Schaffner's medical records which were referenced at the preliminary hearing. Petitioner contends he has a constitutional right to obtain all of his files, and his trial counsel is depriving him of that right by not turning over such files as requested. (*Id*.) In regard to Petitioner's appellate counsel, Petitioner argues he received ineffective assistance because his appellate counsel did not raise the evidentiary claim or the *Brady* claim on direct appeal. Appellate counsel raised only an argument that the enhancement for great bodily injury was inappropriate and warranted appellate relief. Petitioner contends the additional arguments raised in this petition also should have been included in his direct appeal. This is emphasized by Petitioner because his petition for writ of habeas corpus was denied by the Superior Court for failure to raise these additional claims in a direct appeal.

Respondent disagrees with Petitioner and argues Petitioner did not present any deficiencies which rise to the level of ineffective assistance of counsel. (Doc. 17-1 at 14.) Respondent read Petitioner's argument as alleging trial counsel was deficient is failing to utilize the medical records in his trial to prove Petitioner's defense. While Petitioner

made this argument to the Superior and the Supreme Courts of California, Petitioner did not make this argument to this Court. (Lodgment 9 at 12. Lodgment 11 at 17.) Thus, Respondent does not directly rebut Petitioner's argument made before this Court.

The Superior Court denied Petitioner's argument on this ground. The court addressed the altered argument regarding Petitioner's trial counsel.[5] Additionally, the court addressed the argument alleging Petitioner's appellate counsel was ineffective. Therein, the court held because appellate counsel has the "right and duty to review a case and present only the strongest claims," appellate counsel acted appropriately in advancing only the strongest claims in Petitioner's direct appeal. (Lodgment 10 at 5.)

While Petitioner does not set out arguments following the legal framework necessary to show an ineffective assistance of counsel claim, because Petitioner filed his FAP *pro se*, this Court may interpret Petitioner's arguments in a way that fits the legal framework. *Zichko v. Idaho*, 247 F.3d 1015 (9th Cir. 2001).

### *1. Governing Law*

The clearly established United States Supreme Court law governing ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams*, 529 U.S. at 391 (2000) (stating it is beyond question that *Strickland* is the "clearly established" law governing ineffective assistance of counsel claims); *Baylor v. Estelle*, 94 F.3d 1321, 1323 (9th Cir. 1996) (same); *Jones v. Wood*, 114 F.3d 1002, 1013 (9th Cir. 1997) (same). There, the United States Supreme Court establish a two-part test for evaluating ineffective assistance of counsel claims. To establish that his trial counsel was ineffective under *Strickland*, a challenger must show: (1) his trial counsel's performance was deficient; and (2) trial counsel's deficient performance prejudiced his defense. *Ortiz v. Stewart*, 149 F.3d 923, 932 (citing *Strickland*, 466 U.S. at 688, 694).

---

[5] Before the Superior Court, Petitioner argue his trial counsel was ineffective for failing to use Schaffner's medical records.

To establish deficient performance, Petitioner must show that "counsel made errors so serious . . . that counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. The relevant inquiry is not, however, what counsel could have done, but rather whether the decisions made by counsel were reasonable. *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). In considering this factor, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690. The Ninth Circuit "h[as] explained that '[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation.'" *Ortiz*, 149 F.3d at 932 (quoting *Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995)). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review of highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

It is well settled that "[c]onclusory allegations [of ineffective assistance of counsel] which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994); *see also Strickland*, 466 U.S. at 690 (a petitioner "making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment"); *Ortiz*, 149 F.3d at 933 (rejecting ineffective assistance of counsel claim where petitioner failed "to indicate how he was prejudiced by counsel's failure . . ." to conduct cross-examination on a specific issue); *Cranford v. Sumner*, 672 F.Supp. 453, 457 (D. Nev. 1987) ("Aside from the bald allegation that his attorney should have raised this claim but did not, the petitioner has failed to demonstrate how his attorney's performance fell below the reasonable level of professional competence required by *Strickland*").

//

It is well-established that a defendant has the ultimate authority to make fundamental decisions regarding whether to plead guilty, waive a jury trial, testify in his or her own behalf, or take an appeal. *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1 (1977) (Burger, C.J. concurring). However:

> [no decision of the Supreme Court] suggests, . . . the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.

*Jones v. Barnes*, 463 U.S. 745, 751 (1983). To require otherwise would "seriously undermine[] the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Id*. The professional judgment and evaluation every defendant is entitled to is an examination of the record, research of the law, and the marshaling of arguments on behalf of the defendant. *Douglas v. California*, 372 U.S. 353, 358 (1963).

Additionally, under the AEDPA, the federal court's review of the state court's decision is subject to another level of deference. *Bell*, 535 U.S. at 689-699. In order to merit habeas relief, therefore, Petitioner must make the additional showing that the state court's ruling that counsel was not ineffective constituted an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d)(1); *West v. Schriro*, 2007 U.S. Dist. LEXIS 90802 (D.Ariz. Nov. 29, 2007).

The Ninth Circuit has held that a convicted defendant has no Sixth Amendment rights on appeal because appellate review is not required of states. "If, however, the State elects to furnish an avenue for appeal, its procedures must comport with the Due Process and Equal Protections Clauses of the Fourteenth Amendment." *Tamalini v. Stewart*, 249 F.3d 895 (9th Cir. 2001).

### 2. *Application*

With respect to the trial counsel, who Petitioner claims is "not responding or cooperating" with Petitioner's attempts to obtain the case file, this Court cannot conclude Petitioner has alleged any more than conclusory claims. (Doc. 4 at 31.) *James*, 24 F.3d at

27. In his argument that trial counsel has been ineffective, Petitioner does not put forth any evidence of his attempts to obtain his case file from trial counsel. Petitioner simply contends "trial [counsel] was the last known owner of the Petitioner's case discovery files" and as such, failed to deliver copies to Petitioner upon termination of representation. (Doc. 4 at 31.)

Petitioner seems to be arguing trial counsel violated the California Rule of Professional Conduct 3-700, whereby an attorney is required to return "all client papers and property" to the client if the client so requests. These "papers and property" includes "correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation . . . ." *Id.* at (D). This Court finds Petitioner's claim inappropriate for habeas relief.

Habeas relief exists for persons in custody to seek relief on the ground they are in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Pertaining to this request, Petitioner is clearly not disputing he is in custody in violation of the Constitution or federal laws. Instead, this request is just that: a request. Petitioner has included a motion to compel type of argument within his FAP. While the Court cannot grant habeas relief on this ground, Petitioner may file a motion to compel Respondent to produce his case file, including all discovery. *See Viray v. Donat*, 2008 U.S. Dist. LEXIS 119619, *1 (Nev. May 22, 2008) (where the petitioner had filed a motion to compel the state court record and "'other relevant records' contained in the Public Defender's file" at the state level, the court directed the Petitioner to peruse the state court record lodged by respondent in the federal district court and "to the extent petitioner [sought] additional portions of the record, he may file a motion . . . for respondents to produce the same").[6]

---

[6] Even if Petitioner's claim was cognizable on habeas, Petitioner's claim would fail for failure to exhaust. A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based. B*land v. California Dep't of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994). The exhaustion requirement is not met when the

33

27. In his argument that trial counsel has been ineffective, Petitioner does not put forth any evidence of his attempts to obtain his case file from trial counsel. Petitioner simply contends "trial [counsel] was the last known owner of the Petitioner's case discovery files" and as such, failed to deliver copies to Petitioner upon termination of representation. (Doc. 4 at 31.)

Petitioner seems to be arguing trial counsel violated the California Rule of Professional Conduct 3-700, whereby an attorney is required to return "all client papers and property" to the client if the client so requests. These "papers and property" includes "correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation . . . ." *Id.* at (D). This Court finds Petitioner's claim inappropriate for habeas relief.

Habeas relief exists for persons in custody to seek relief on the ground they are in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Pertaining to this request, Petitioner is clearly not disputing he is in custody in violation of the Constitution or federal laws. Instead, this request is just that: a request. Petitioner has included a motion to compel type of argument within his FAP. While the Court cannot grant habeas relief on this ground, Petitioner may file a motion to compel Respondent to produce his case file, including all discovery. *See Viray v. Donat*, 2008 U.S. Dist. LEXIS 119619, *1 (Nev. May 22, 2008) (where the petitioner had filed a motion to compel the state court record and "'other relevant records' contained in the Public Defender's file" at the state level, the court directed the Petitioner to peruse the state court record lodged by respondent in the federal district court and "to the extent petitioner [sought] additional portions of the record, he may file a motion . . . for respondents to produce the same").[6]

---

[6] Even if Petitioner's claim was cognizable on habeas, Petitioner's claim would fail for failure to exhaust. A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based. B*land v. California Dep't of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994). The exhaustion requirement is not met when the

27. In his argument that trial counsel has been ineffective, Petitioner does not put forth any evidence of his attempts to obtain his case file from trial counsel. Petitioner simply contends "trial [counsel] was the last known owner of the Petitioner's case discovery files" and as such, failed to deliver copies to Petitioner upon termination of representation. (Doc. 4 at 31.)

Petitioner seems to be arguing trial counsel violated the California Rule of Professional Conduct 3-700, whereby an attorney is required to return "all client papers and property" to the client if the client so requests. These "papers and property" includes "correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation . . . ." *Id.* at (D). This Court finds Petitioner's claim inappropriate for habeas relief.

Habeas relief exists for persons in custody to seek relief on the ground they are in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Pertaining to this request, Petitioner is clearly not disputing he is in custody in violation of the Constitution or federal laws. Instead, this request is just that: a request. Petitioner has included a motion to compel type of argument within his FAP. While the Court cannot grant habeas relief on this ground, Petitioner may file a motion to compel Respondent to produce his case file, including all discovery. *See Viray v. Donat*, 2008 U.S. Dist. LEXIS 119619, *1 (Nev. May 22, 2008) (where the petitioner had filed a motion to compel the state court record and "'other relevant records' contained in the Public Defender's file" at the state level, the court directed the Petitioner to peruse the state court record lodged by respondent in the federal district court and "to the extent petitioner [sought] additional portions of the record, he may file a motion . . . for respondents to produce the same").[6]

---

[6] Even if Petitioner's claim was cognizable on habeas, Petitioner's claim would fail for failure to exhaust. A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based. B*land v. California Dep't of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994). The exhaustion requirement is not met when the

With respect to appellate counsel, Petitioner claims his appellate counsel was deficient by not raising the alleged *Brady* claim nor the evidentiary claim, both of which are raised herein. "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982). As discussed thoroughly in preceding sections, both the *Brady* and the evidentiary claims were meritless. Based on this, Petitioner received effective assistance of counsel on appeal. Therefore, habeas relief is **DENIED** on this claim.

## V. CONCLUSION

This Report and Recommendation is submitted to the Honorable Gonzalo P. Curiel, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(c) of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition for Writ of Habeas Corpus.

Any party may file written objections with the Court and serve a copy on all parties on or before **January 11, 2018**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **January 23, 2018**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the district court's order. *Ylst*, 951 F.2d at 1157 (9th Cir. 1991).

---

petitioner presents to the federal court facts or evidence which place the claim in a significantly different posture than it was in the state courts, or where different facts are presented at the federal level to support the same theory. *See Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988); *Pappageorge v. Sumner*, 688 F.2d 1294, 1295 (9th Cir. 1982); *Johnstone v. Wolff*, 582 F. Supp. 455, 458 (D. Nev. 1984). Whereas Petitioner presented his ineffective assistance claim to the Superior and Supreme Courts of California as based on trial counsel's failure to introduce the medical records, Petitioner bases his claim on trial counsel's failure to provide him with the medical records in his FAP filed with this Court. These grounds are different to the extent that this claim is not exhausted at the state court level.

**IT IS SO ORDERED.**

Dated:  December 20, 2017

_____
Hon. Peter C. Lewis
United States Magistrate Judge