UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN CHILCOTE,<br><br>                              Petitioner,<br><br>v.<br><br>S. SHERMAN, Warden,<br><br>                              Respondent. | Case No.:  3:17-cv-0061-GPC-PCL<br><br>**ORDER ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[DKT. NO. 4, 20]** |

I.    **INTRODUCTION**

Petitioner Ryan Chilcote ("Petitioner"), before this Court *pro se* and *in forma pauperis*, filed his first amended petition for writ of habeas corpus ("FAP") on April 5, 2017. (Dkt. No. 4.)  Petitioner requests habeas relief based on four arguments: (1) there is insufficient evidence to support a great bodily injury enhancement to Petitioner's conviction; (2) the trial court allowed inadmissible evidence to be presented to the jury; (3) the trial court committed a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding a Facebook video from the California Court of Appeal and all successive

reviewing courts; and (4) Petitioner received ineffective assistance of counsel from his trial and appellate attorneys. (Dkt. No. 4.)

Pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC. 2 of the United States District Court for the Southern District of California, Magistrate Judge Peter Lewis issued a Report and Recommendation ("Report") recommending that this Court deny the Petition. (Dkt. No. 20.)  Petitioner did not file a written objection to the Report on or before the January 11, 2018 deadline established by the Report.

After a thorough review of the issues and documents presented, this Court **ADOPTS IN PART** the Magistrate Judge's Report and **DENIES** the petition for writ of habeas corpus.  The Court also **DENIES** a certificate of appealability.

## II.    BACKGROUND

### A.    FACTS

Petitioner does not dispute the facts, so this Court provides the following summary based on the opinion of the California Court of Appeal.[1]

Petitioner and his girlfriend, Cassandra Schaffner, lived together. On May 3, 2014, Petitioner, Schaffner, and two friends were drinking and smoking marijuana throughout the day and evening.  Schaffner became very intoxicated and, as a result, fell several times. After their friends left, Petitioner and Schaffner had an argument that turned into a physical altercation.   Schaffner attempted to avoid confrontation by leaving the apartment, but Petitioner stopped her.   Eventually, Schaffner convinced Petitioner to let her smoke outside. Schaffner attempted to flee when she was outside, but she was stopped by

---

[1] This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. §2254(e)(1); *see also Sumner v. Mata*, 449 U.S. 539, 550 (1981) (holding in part that findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness).

Petitioner who grabbed Schaffner by her neck or arm and forced her back inside the apartment. Petitioner proceeded to choke and hit Schaffner. Schaffner believes she became unconscious while Petitioner was choking or hitting her because she woke up on the ground in the living room. A neighbor in the apartment complex heard and saw the commotion and one of the neighbors made an anonymous 911 call.

When the responding officer arrived at the apartment, the officer observed Schaffner on the ground, with blood on the carpet near her, and blood on Petitioner's hands, neck and ear. Initially, the responding officer questioned Schaffner about her injuries while in the presence of Petitioner, and she said the injuries resulted from a fight with a female friend. When paramedics responded, blood was coming from Schaffner's nose and mouth. While en route to the hospital, Schaffner told paramedics that Petitioner had assaulted her. Schaffner had multiple injuries: (1) facial injuries, including swelling of the entire right side of her face, a right eye that was swollen shut, bleeding from a laceration under her right eye, and bruised lips; (2) injuries on her neck, including redness, bruising, and handprint marks consistent with choking or strangulation; (3) lacerations on parts of her body other than her face, including a bleeding laceration on her collarbone and a laceration under her right ear; and, (4) abrasions and scratches on her legs, some of which she reported from being dragged into the apartment. The day after the incident, Schaffner's eye was still swollen shut, she had an open laceration on her face, her head and face were swollen, she had bruises on her neck, and she complained of pain. (Dkt. No.18-20 at 2-4.)

### B.    PROCEDURAL BACKGROUND

In San Diego Superior Court, Petitioner was charged with:

(1)    Kidnapping (Cal. Pen. Code § 207(a));

3

(2)     Corporal injury to a cohabitant (Cal. Pen. Code § 273.5(a)), with the further enhancement alleging infliction of great bodily injury (Cal. Pen. Code § 1192.7(c)(8)), and done under circumstances involving domestic violence (Cal. Pen. Code § 12022.7 (e));

(3)     False imprisonment (Cal. Pen. Code §§ 236, 237, subd. (a));

(4)     Attempting to dissuade a witness (Cal. Pen. Code § 136.1(b)(3)); and,

(5)     Disobeying a court order (Cal. Pen. Code § 273.6 (a)).

(Dkt. No. 18-20 at 4.) The prosecution dismissed count five.  The jury found Petitioner guilty of count two (corporal injury to a cohabitant with great bodily injury) and count three (false imprisonment), and not guilty of counts one and four. *Id.*  Petitioner was sentenced to five years in prison, including a three-year term for the great bodily injury enhancement pursuant to § 12022.7(e). *Id.*

After sentencing, Petitioner filed a direct appeal in which he made a single argument: evidence used to prove great bodily injury was insufficient, and therefore the trial court erred in allowing the sentencing enhancement. (Dkt. No. 18-17 at 26.)  Based on Petitioner's reading of *People v. Santana*, 56 Cal. 4th 999 (2013), he argued that a finding of great bodily injury for the enhancement requires proof of an injury greater and more severe than that required to establish serious bodily injury for a battery conviction. (Dkt. No. 18-17 at 31.)  The Court of Appeal rejected Petitioner's argument, found *Santana* was distinguishable and concluded there was sufficient evidence to support the sentencing enhancement. (Dkt. No. 18-20 at 8.)  Petitioner exhausted his direct appeal with the Supreme Court of California, (Dkt. No. 18-22.), which summarily denied Petitioner's petition for review. *Id.*

Petitioner, proceeding pro se, filed a petition for writ of habeas corpus in the Superior Court of California on December 30, 2016. (Dkt. No. 18-23.)  Petitioner again

raised the sufficiency of the evidence for the enhancement and added three new arguments not raised in his direct appeal. Petitioner's argued in his petition that (1) the trial court allowed inadmissible evidence and denied admissible evidence during trial; (2) the prosecution and trial court committed a *Brady* violation by withholding a Facebook video from the record; and, (3) both his trial and appellate attorneys provided ineffective assistance of counsel. *Id.* The Superior Court rejected Petitioner's renewed argument of insufficient evidence for the sentencing enhancement because the issue was fully litigated on direct appeal. (Dkt. No. 18-24 at 2.) The court found Petitioner failed to demonstrate that his petition was exempt from the general rule barring relitigation of issues already addressed on direct appeal. *Id.* The court also held that notwithstanding a procedural bar from habeas relief, no relief could be granted because Petitioner's additional arguments were meritless. *Id.* at 3-5.

The state record lodged by Respondent indicates that Petitioner did not file a petition for writ of habeas corpus in the Court of Appeal. (Dkt. No. 20 at 5.) Petitioner did file a petition for writ of habeas corpus in the Supreme Court of California which was summarily denied.

Before this Court is Petitioner's petition for writ of habeas corpus based on the same grounds presented to the San Diego County Superior Court and Supreme Court of California, with minor alterations to be discussed where relevant. (Dkt. No. 4 at 12.)[2]

---

[2] Petitioner's accidentally mailed a state habeas corpus petition meant for the San Diego Superior Court to the United States District Court of Southern California. *See* Dkt. No. 1. An amended first petition was later filed and is the operative petition. *See* Dkt. No. 4.

3:17-cv-0061-GPC-PCL

III.   **STANDARD OF REVIEW**

A.   **Review of the Magistrate Judge's Report and Recommendation**

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) outline the procedure regarding the district court's treatment of a magistrate judge's report and recommendation. The district court "may accept, reject, or modify, in whole or in part, the findings of recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Raddatz*, 447 U.S. 667, 675 (1980).

When no objections to the report have been filed, as is the case here, the Court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. *Johnson v. Nelson*, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001) (citing *Campbell v. U.S. District Court*, 501 F.2d 196, 206 (9th Cir. 1974)). The Ninth Circuit has held that failure to file objections relieves the trial court of its burden to give *de novo* review to factual findings; conclusions of law must still be reviewed *de novo*. *See Robbins v. Carey*, 481 F.3d 1143, 1147 (9th Cir. 2007).

B.   **Review of Habeas Petitions**

A federal court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). It is not within the province of federal habeas courts to "reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). A federal court deciding a habeas petition applies an extraordinary deferential review with the sole purpose of inquiring whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). Except for any objectively unreasonable application, a state

court's interpretation of state law "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

## C. The Antiterrorism and Effective Death Penalty Act of 1996

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this petition. *See Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997). Pursuant to the AEDPA, a federal court may not grant habeas relief for any claim adjudicated on the merits in state court unless the decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law"; or, (2) "based on an unreasonable determination of the facts in light of the evidence presented[.]" 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

### 1. AEDPA First Prong

The Supreme Court has held that "clearly established Federal law" as used in § 2254, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). So long as the state court judgment's reasoning or result is not contradictory to any Supreme Court decision, the judgment need not specifically cite Supreme Court jurisprudence. *Early*, 537 U.S. at 8; *see also Frantz v. Hazey*, 533 F.3d 724, 734 (9th Cir. 2008) (en banc) ("In other words, mistakes in reasoning or in predicate decisions of the type in question here—use of a wrong legal rule or framework—do constitute error under the 'contrary to' prong of the § 2254(d)(1).").

### 2. AEDPA Second Prong

A federal court sitting in habeas review "may issue the [habeas] writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

7

Should a state court correctly identify the governing Supreme Court jurisprudence but unreasonably apply it, a federal court sitting in habeas review "may grant relief under the 'unreasonable application' clause." *Id.* Notably, unreasonable application entails "more than incorrect or erroneous" application of law by the state court to warrant habeas relief. *Andrade*, 538 U.S. at 75. The AEDPA standard is only met upon a state court's "objectively unreasonable" application of the law. *Id.*

If the state's highest court does not issue a reasoned decision regarding a habeas petition, the federal court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Y1st v. Nunnemaker*, 501 U.S. 797, 805-06 (1991).

## IV.    DISCUSSION

Petitioner advances four arguments in his FAP. (Dkt. No. 4.) First, Petitioner argues the trial court erred in adding the great bodily injury enhancement to his infliction of corporal injury charge. Second, Petitioner argues that the trial court improperly allowed Schaffner's preliminary hearing testimony to be read in her absence, and improperly admitted the testimony of Officer Kenneth Gray which described his interview with Schaffner at the police station a day after the incident. Third, Petitioner argues the trial court committed a *Brady* violation by withholding a Facebook video from the record, thereby depriving the reviewing courts of the evidence. Previously, Petitioner's petitions filed in the Superior and Supreme Court of California alleged the prosecution had committed this violation but before this Court, Petitioner makes the allegation solely against the trial court. (Dkt. No. 20 at 7 n.2.) Fourth, Petitioner argues he received ineffective assistance of counsel from his trial and appellate attorneys.

## A.     Great Bodily Injury Enhancement

Petitioner argues the trial court's imposition of the great bodily injury enhancement was improper.[3] (Dkt. No. 4 at 18.)  Petitioner maintains that his alleged infliction of great bodily injury could not be proved beyond a reasonable doubt because the prosecution did not offer medical evidence, expert testimony, or medical records regarding Schaffner's injuries. Petitioner argues the jury could only speculate as to the severity of Schaffner's injuries based on the photographs taken at the hospital on May 3, 2014, and the police station on May 4, 2014.  Additionally, Petitioner questions the existence of medical records.  Petitioner argues that medical records proving great bodily injury would heavily weigh in Respondent's favor, and because they were not introduced, the records likely reflect the injuries were not severe. (Dkt. No. 4 at 19.)

Respondent counters Petitioner's argument in two parts. First, Respondent relies on Schaffner's injuries *ipso facto* to prove they were sufficient to warrant the great bodily injury enhancement.  Respondent had bruises, swelling, and lacerations on her face, neck, and legs. (Dkt. No. 18-20 at 3.)  Second, Respondent argues that the medical records were unnecessary to prove the enhancement because of the prosecution's introduction of photographs of the injuries, the testimony of Officer Gray who observed Schaffer on the night of the incident and the next day, and the testimony of Schaffner's father who similarly observed Schaffner.

On direct appeal, Petitioner argued that a heightened standard was necessary to prove great bodily injury. *Id.* at 7-8. The Court of Appeal rejected Petitioner's argument, finding that Schaffner's injuries were consistent with precedent identifying what constitutes great bodily injury. *Id.*

---

[3] The Court agrees with the Magistrate Judge that this argument requires an assessment of the sufficiency of the evidence.  (Dkt. No. 20 at 8 n.3.)

### 1. Governing Law

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction, "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*, a review of the sufficiency of the evidence to support a criminal conviction requires the court to inquire as to whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* As such, the reviewing court "must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995); see also *Jackson*, 443 U.S. at 319, 324, 326. A state prisoner who alleges the evidence introduced at trial was insufficient to support the jury's findings states a cognizable federal habeas claim. *Herrera v. Collins*, 506 U.S. 390, 401-402 (1993). In doing so, the prisoner faces a "heavy burden" to prevail on such a claim. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

A federal court may only overturn a state court decision rejecting a sufficiency of the evidence challenge "if the state court decision was objectively unreasonable." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam); *see also Emery v. Clark*, 643 F.3d 1210, 1213-14 (9th Cir. 2011) ("When we undertake collateral review of a state court decision rejecting a claim of insufficiency of the evidence pursuant to 28 U.S.C. §

2254(d)(1) . . . we ask only whether the state court's decision was contrary to or reflected an unreasonable application of *Jackson* to the facts of a particular case.").

In adjudicating an insufficiency of the evidence claim, a federal court reviewing a habeas petition "look[s] to [state] law only to establish the elements of [the crime] and then turn[s] to the federal question of whether the [state court] was objectively unreasonable in concluding that sufficient evidence supported [the conviction]." *Juan H.*, 408 F.3d at 1278 n. 14. A federal court must follow the California courts' interpretation of state law to determine whether the evidence was sufficient. *Bradshaw v. Richey*, 546 U.S. 74 (2005).

The challenged great bodily injury sentencing enhancement is found in California Penal Code § 12022.7(a). Per § 12022.7(a), a defendant may be sentenced to an additional and consecutive term of three years if the jury finds he personally inflicted "great bodily injury" upon the victim of a crime. California Penal Code § 12022.7(f), in turn, defines "great bodily injury" as "significant or substantial physical injury."

## 2. Application

The question for this Court is whether rational jurors could reach the conclusion that the jurors in Petitioner's case reached. *See Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991).[4] Schaffner's injuries were visible on her body. There were cuts on her face, collar bone, and under her ear. She also had bruising on her neck as a result of Petitioner strangling her. Schaffner also had multiple abrasions on her legs from being dragged by Petitioner back into the apartment. The day after the incident, Schaffner's eye remained swollen shut and Schaffner complained of continued pain. (Dkt. No. 18-20 at 7.)

---

[4] Here, Petitioner presents a slightly different argument from the one he presented on direct appeal regarding the great bodily injury enhancement. (Dkt. No. 20 at 12.) There, Petitioner argued that the extent of the injuries inflicted to prove serious bodily injury or great bodily injury should be greater than the extent of injuries required to prove battery. (Dkt. No. 18-17 at 28-34.)

3:17-cv-0061-GPC-PCL

Petitioner argues that he did not inflict great bodily injury because Schaffner allegedly recovered in less than two weeks and was not "prevent[ed] from [completing] any daily life activities." (Dkt. No. 20 at 13.) This argument ignores a great body of California state law precedent. Under California law, evidence of some physical pain or damage, such as lacerations, bruises, or abrasions, is sufficient to support a finding of great bodily injury. *People v. Washington*, 210 Cal. App. 4th 1042, 1047 (2012). California case law pertaining to a finding of great bodily injury as defined in § 12022.7(f) does not require, as Petitioner argues, "that the victim suffer 'permanent,' 'prolonged' or 'protracted' disfigurement, impairment, or loss of bodily function." *See People v. Escobar*, 3 Cal. 4th 740, 750 (1992). The evidence here was sufficient to show that Petitioner inflicted great bodily injury upon Schaffner. *See Pina v. Biter*, 2015 WL 1089335, at *9-10 (C.D. Cal. Mar. 4, 2015) (finding sufficient evidence for a great bodily injury enhancement where the victim suffered abrasions on her face, multiple bruises on her face, a cut on her lip requiring stitches and resulting in permanent disfigurement, and dizziness and incoherence in the aftermath of the attack); *Stewart v. Cox*, 2014 WL 7384417, at *1-3 (C.D. Cal. Dec. 29, 2014) (finding sufficient evidence of great bodily injury where the victim's eye became "really swollen" and "black," and remained this way "for two to three weeks"; the victim had headaches for about two weeks afterwards; and the victim experienced immediate pain and dizziness from the attack). Based on the evidence presented in this case, the Court concludes any rational jury could have reached the same conclusion, finding Petitioner did inflict great bodily injury upon Schaffner.

Petitioner additionally argues that the omission of medical records supports the conclusion that the injuries were not severe. This argument fails because medical records of hospitalization and treatment are not required to show great bodily injury. *See Carreon v. Long*, 2014 WL 1093074, at *18 (C.D. Cal. Feb. 7, 2014) (holding that the testimony

of the victim and the nurse who treated the victim was "itself evidence of [the victim's] injuries regardless of any medical records").[5]  At trial, the prosecution introduced testimony of a firefighter-paramedic who treated Schaffner on the way to the hospital. Pinson testified that Schaffner presented with "soft tissue swelling to the face[,] [e]yes [that] were swollen shut[,] [l]ips [that] were swollen [,and] blood coming from [her] nose and mouth." (Dkt. No. 18-9 at 108.)  Additionally, the prosecution presented Scaffner's preliminary hearing testimony, in which Schaffner described her injuries. (Dkt. No. 18-10 at 64, "he dragged me inside the house," "he grabbed my neck"; at 65, "he came in[to the bathroom] with me and started choking me . . . "; at 69, "my nose was bleeding and my mouth was bleeding and my eye, like, split open . . . I had blood on my shirt and my shorts.")  The testimony of Pinson and Schaffner was sufficient evidence to prove great bodily injury—medical records were unnecessary.

The prosecution presented a considerable amount of evidence proving Schaffner's injuries: testimony from Pinson, testimony from Schaffner, and photographs of Schaffner after the incident.  The weight of this evidence clearly supports a great bodily injury enhancement. Given the strength of the evidence, a jury presented with such evidence could easily conclude that Petitioner inflicted great bodily injury upon Schaffner.  The Court of Appeal's rejection of Petitioner's claim was not contrary to, nor an objectively unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d).  Accordingly, habeas relief on this claim is **DENIED**.

---

[5] The Court observes that the unpublished decision *People v. Perez*, No. E059991, 2015 Cal. App. Unpub. LEXIS 1624, at *3 (Cal Ct. App. Mar. 4, 2015)—cited in the Report at page 14—also supports the proposition that great bodily injury may be found without the support of medical records.

**B.    Evidentiary Issues**

    **1.    Procedural Bar**

"Federal habeas courts generally refuse to hear claims 'defaulted . . . in state court pursuant to an independent and adequate state procedural rule.'" *Johnson v. Lee*, 136 S. Ct. 1802, 1803-04 (2016) (internal citations omitted).  The Supreme Court recently held that California's so-called *Dixon* bar, *see In re Dixon*, 41 Cal. 2d 756 (1953), constitutes one such adequate state procedural rule. *See Johnson*, 136 S. Ct. at 1805.  *Dixon* requires criminal defendants to raise available claims on direct appeal.  41 Cal. 2d at 759. When a procedural default bars litigation of a constitutional claim in state court, a state prisoner may not obtain federal habeas corpus relief absent a showing of "cause and actual prejudice." *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Petitioner's second and third claims within the FAP are procedurally barred because they were not raised on direct appeal, and Petitioner has not attempted to show cause and actual prejudice.  The magistrate judge's Report mentions that Petitioner's evidentiary claim was rejected by the state court on procedural grounds, Dkt. No. 20 at 17, and that Petitioner failed to raise his redaction of evidence claim on direct appeal, Dkt. No. 20 at 16.  The Report, however, did not determine whether these claims were procedurally barred.  This Court holds that Petitioner's second and third claims are procedurally defaulted because they were not presented on direct appeal, and Petitioner has failed to show cause and actual prejudice.  *See Swanson v. Tampkins*, 2018 WL 2193440, at *2 (S.D. Cal. May 14, 2018) (holding that claim was procedurally defaulted under *Johnson* where California Court of Appeal explicitly relied on *Dixon* to find Petitioner's claim procedurally barred); *Garcia v. Kernan*, 2017 WL 882311, at *5 (S.D. Cal. March 6, 2017) ("Accordingly, the California Court of Appeal's denial of Petitioner's habeas claims, except for his IAC claims, for failure to raise them on direct appeal also

constitutes an independent and adequate procedural ground barring those claims in the present federal habeas petition unless Petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice.") Because the Report failed to address the issue of procedural default, this Court adopts it in part with respect to the second and third claims. Notwithstanding the holding regarding the procedural bar, this Court will consider the merits of Petitioner's claims as alternative grounds. *See Thomas v. Arnold*, 2018 WL 279975, at *5 (S.D. Cal. Jan. 3, 2018) (finding that the "interests of judicial economy support addressing the merits" without determination of whether the claim was procedurally defaulted).

### 2. Merits

Petitioner argues the trial court improperly allowed inadmissible evidence in three instances which rendered his trial unfair. (Dkt. 4 at 25.) First, Petitioner contends the May 4, 2014 interview with Schaffner, conducted at the police station by Officer Gray with Schaffner's father present, was inadmissible because Schaffner's father "became active in his daughter's interview and then even answered the bulk of the questions." *Id.* at 26. Second, Petitioner argues Schaffner's testimony from the preliminary hearing was not appropriate to be read at trial because Schaffner had later executed a jurat which included statements that almost entirely contradicted her prior testimony. Petitioner believes that because the jurat was available, Schaffner's previous testimony should not have been admitted. Third, Petitioner contests the trial court's redaction of Schaffner's jurat. At trial, Schaffner's jurat, with limited redactions, was read into the record by Petitioner's trial counsel. The trial court determined that the content redacted from the jurat—and therefore not read into the record—would not assist the jury's decision-making process. *See* Dkt. No. 18-11 at 29. Petitioner asserts that these redactions violated the rule of completeness. (Dkt. No. 4 at 28.)

1    Respondent rebuts this claim by arguing first that because Petitioner did not raise

2   the claim in his direct appeal, Petitioner has procedurally defaulted on this claim.

3   Furthermore, Respondent argues that the claims are based on independent and adequate

4   state law procedural rules, thus barring federal habeas relief.

5        This claim was not raised on direct appeal.  In exhausting his state remedies,

6   Petitioner did not file a petition for writ of habeas corpus in the Court of Appeal and the

7   Supreme Court of California summarily denied Petitioner's full petition.  Thus, the only

8   review this claim has received is from the Superior Court. (Dkt. No. 18-24.)  This Court

9   looks through to the highest reasoned decision. There, the Superior Court found the claim

10  was "not cognizable on habeas corpus" because habeas relief is not appropriate to review

11  claims based on trial court rulings or procedural errors. *Id.* at 3.

### a) *Governing Law*

13       In reviewing a state court adjudication, a federal habeas court looks to the last

14  reasoned state decision as the basis for the state court's final judgment. *Barker v.*

15  *Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S

16  797, 803-04 (1991); *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)), cert. denied, 538

17  U.S. 919 (2003).  When the state court's adjudication of a claim on the merits does not

18  articulate a rationale, a federal habeas court must make an "independent review" of the

19  record in order to determine whether the state court's decision on the claim was contrary

20  to or an unreasonable application of controlling law. *Delgado v. Lewis*, 223 F.3d 976,

21  981-82 (9th Cir. 2000); *see also Allen v. Ornoski*, 435 F.3d 946, 955 (9th Cir. 2006)

22  ("[T]he independent review undertaken under *Delgado* is not the equivalent of *de novo*

23  review, but rather is a style of review which views the state court decision through the

24  objectively reasonable lens ground by *Williams* [*v. Taylor*, 529 U.S. 362 (2000)]. In

25  addition, although [the Court] independently review[s] the record, [the Court] still

16

defer[s] to the state court's ultimate decision.") (internal quotation marks and citations omitted).

De novo review is required when claims are rejected on procedural grounds rather than on the merits.[6] *See Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004) ("*De novo* review, rather than AEDPA's deferential standard, is applicable to a claim that the state court did not reach on the merits." (citation omitted)); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (citations omitted); *see also Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004) (holding that AEDPA phrase "adjudicated on the merits" means that state court has reached decision "on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits").

Generally, a federal court may not grant federal habeas relief based on errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 63 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). A claim of state law error may warrant habeas relief if "the state court's admission of this evidence violated the petitioner's federal due process right to a fair trial under the Constitution." *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990); *see also Estelle*, 502 U.S. at 70. The reviewing court must determine "whether the admission of the evidence so fatally infected the proceedings as to render them fundamentally unfair." *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) (citing *Kealohapauole v. Shimoda*, 800 F.2d 1463, 1465 (9th Cir. 1986); *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 897 (9th Cir. 1996) ("While a petitioner for federal habeas relief may not challenge the application of

---

[6] Here, it is apparent that Petitioner's claims were rejected by the state courts on procedural grounds rather than on the merits.

state evidentiary rules, he is entitled to relief if the evidentiary decision created an absence of fundamental fairness that 'fatally infected the trial.'").

The questions before this Court, therefore, are whether Petitioner's trial was fundamentally unfair due to the admission of Officer Gray's testimony and Schaffner's preliminary hearing testimony, and whether the trial court erred by improperly redacting Schaffner's jurat prior to its introduction.

b)   *Application: Officer Gray's Testimony*

At trial, Officer Gray's testimony involved a recap of two interviews: (1) the first interview conducted with Schaffner on the night of the incident on May 3, 2014 and (2) the second interview conducted the following day on May 4, 2014, during which Schaffner and her father were both present. Petitioner argues the testimony regarding statements made or information learned from the second interview was inadmissible. (Dkt. No. 4 at 26.)  Petitioner's argument stems from his belief that Schaffner's father "answered questions [posed about] facts of a criminal case that he was not part of or witness to[]." *Id.*  According to Petitioner, Schaffner's father coerced or otherwise intimidated Schaffner to change her recollection of the incident during the interview.

Petitioner's argument misrepresents the events of the May 4, 2014 interview with Schaffner and her father.  The transcript of the interview reveals instances where Schaffner's father was indeed active; however, as the transcript also clearly reflects, Schaffner's father does not make any statements regarding the May 3, 2014 incident. Rather, Schaffner's father was a passive participant who provided answers to questions about prior incidents where police were called because Petitioner became violent. (Dkt. No. 18-1 at 80.)  Schaffner's father suggested that marks on Schaffner's back were perhaps amongst injuries inflicted by Petitioner on a date previous to the incident in question. *Id.* at 86.  Schaffner's father also spoke towards the end of the interview when

18

Officer Gray discussed Schaffner's future plans.  The totality of the interview transcript defeats Petitioner's claim.  Schaffner's father did not become active to a point that would have caused Schaffner to alter or distort her answers.  Schaffner's father only provided background information, none of which was relevant to the May 3, 2014 incident.

Furthermore, if Petitioner felt the interview had been tainted by Schaffner's father, Petitioner's trial counsel could have elicited such information during the cross examination of Officer Gray.  During cross examination, Petitioner's trial counsel focused only on the presence of Schaffner's father at the interview, as opposed to the impact of his presence or a change in Schaffner's demeanor based on the presence of her father. (Dkt. No. 18-9 at 166-167.) ("Q: Why was her father permitted to be present during this interview?; Q: In this case would it not have been a violation of protocol [t]o have the alleged victim's father present[?]) Petitioner had a fair chance to cross examine Officer Gray to gain information which would lead the jury to believe Schaffner's interview was improperly influenced by her father's presence.  Therefore, the use of this interview as evidence to convict Petitioner was not fundamentally unfair.

c)    *Application: Schaffner's Preliminary Hearing Testimony*

Petitioner argues Schaffner's preliminary hearing testimony was inadmissible because: (1) Schaffner's later executed jurat contradicts the earlier testimony; (2) the phone call between Schaffner and her father when Schaffner asked her father why he was "doing this" was on the same date the jurat was executed; and, (3) Schaffner's father "perhaps intimidat[ed] and [was] the cause of the prelim[inary hearing] testimony." (Dkt. No. 4 at 28.) Petitioner also argues the trial court should have either located Schaffner in order to compel testimony from her at trial, or alternatively, should have allowed only the jurat to stand as Schaffner's testimony rather than her preliminary hearing testimony. (*Id.*)

Though a preliminary hearing is "ordinarily a much less searching exploration into the merits . . . the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to actually be unavailable." *Barber v. Page*, 390 U.S. 719, 725-26 (1968). The Confrontation Clause[7] is not violated through admission of an unavailable witness's preliminary hearing testimony if defendant's counsel was not significantly limited in the scope or nature of his cross-examination of the witness at the preliminary hearing. *California v. Green*, 399 U.S. 149, 165-66 (1970). A preliminary hearing in which counsel's questioning "clearly partook of cross-examination as a matter of form" and "comported with the principal purpose of cross-examination,"—i.e., to challenge the witness's veracity, the accuracy of the witness's perceptions, and the meaning of the witness's language—is a sufficient opportunity to cross-examine, so long as defense counsel is not "limited in any way in the scope or nature of his cross-examination." *Ohio v. Roberts*, 448 U.S. 56, 70, 71-72 (1980).

Despite Petitioner's contention that Schaffner's later executed jurat contradicts the earlier testimony, the jury is the deciding body in determining which statement is more credible, or if either are credible at all. *United States v. Abonce-Barrera*, 257 F.3d 959, 965 (9th Cir. 2001) ("[C]redibility is an issue for the jury"); *Murray v. Laborers Union Local No. 324*, 55 F.3d 1445, 1452 (9th Cir. 1995) ("The credibility of witnesses and the weight of the evidence are issues for the jury and generally not subject to appellate review."). Petitioner's first contention, that Schaffner's later executed jurat contradicts the earlier testimony and is therefore inadmissible, is based on differences between the statement and Schaffner's jurat. Petitioner's argument fails because both statements were

---

[7] Petitioner does not use the phrase "Confrontation Clause" in his petition. Nonetheless, in asserting the court should have located Schaffner, Petitioner implicates the Confrontation Clause, and therefore this Court addresses the implications of Schaffner's unavailability.

properly presented to the jury (Dkt. No. 18-11 at 88, 89.), and the jury was correctly instructed to use the inconsistent statements and assign credibility accordingly. Petitioner has not cited legal authority to support his contention that the allegedly less reliable statement should not be admitted instead of the allegedly more reliable statement. Regarding the reliability of each of these statements, the jury was specifically instructed to weigh each statement, and to factor in their assessment of the credibility of the testifying witnesses. (Dkt. No. 20 at 21.) There is no legal argument supporting Petitioner's devaluation of preliminary hearing testimony; thus his argument is meritless. *See U.S. v. Abonce-Barrera*, 257 F.3d 959, 965 (9th Cir. 2001) ("[C]redibility is an issue for the jury.").

Petitioner also contends that Schaffner called her father the same day the jurat was executed and asked her father why he was "doing this." (Dkt. No. 4 at 28.) Petitioner argues that the phone call enhances the credibility of the jurat, specifically the portions where Schaffner claims her father never liked Petitioner and thus, "fueled by his hatred," was acting "as the mouthpiece for [her] case[.]" (Dkt. No. 18-11 at 30.) Petitioner maintains that statements in the jurat and Schaffner's phone call to her father, prove "Shawn Schaffner has impacted this trial in numerous ways," making the trial unfair to the Petitioner. (Dkt. No. 4 at 27.)

Essentially, Petitioner presents the phone call to boost the jurat's credibility against the credibility of the preliminary hearing testimony. However, he could have presented it during trial through his trial counsel. When the opportunity was presented, trial counsel did not cross-examine Schaffner's father about the phone call or his alleged hatred for Petitioner. Petitioner's trial counsel failed to pose any questions about the phone call during cross-examination, and also during closing arguments. (Dkt. No. 18-10 at 255-257.) Schaffner gave multiple statements to investigators, medical personnel, and the

court. In light of these statements, the credibility of the jurat would not have noticeably increased by presenting similarities between the call and the jurat. Petitioner was allowed to present Schaffner's jurat which contradicted Schaffner's preliminary hearing testimony. Because Petitioner was allowed to present this inconsistent statement to the jury, Petitioner's trial was not fundamentally unfair.

Next, Petitioner argues that Schaffner's preliminary hearing statements are inadmissible because at the time they were made, Schaffner was living with her father who improperly coerced or otherwise influenced her. Petitioner notes that when Schaffner testified at the preliminary hearing, she was living with her father, but when she executed the jurat, in which she recanted and claimed Petitioner was not the cause of her injuries, Schaffner was no longer living with her father. Petitioner claims the change in narrative all relates to the presence of Schaffner's father. Again, this argument is something Petitioner had the opportunity to raise during the cross-examination of Schaffner at the preliminary hearing. It was at that time that Petitioner should have requested trial counsel cross examine Schaffer on the influence of her father on her testimony. Petitioner's counsel only cross-examined Schaffner about her multiple conflicting statements, not the cause of the conflicting statements. (Dkt. No. 18-10 at 78-83.)

None of Petitioner's reasons for claiming the preliminary hearing testimony was inadmissible are a basis for habeas relief because they all center upon the statement's credibility—Petitioner should have raised these arguments through cross examination. Preliminary hearing testimony was admissible, and the trial court was correct in allowing it to be read at trial based upon Schaffner's unavailability. Furthermore, because the trial court allowed Petitioner to introduce the redacted jurat to contradict the preliminary hearing testimony, Petitioner was adequately able to attack Schaffner's credibility at this

time, despite Scahffner's unavailability, and therefore it cannot be said that Petitioner's trial was fundamentally unfair.

### d) *Application: Redaction of Schaffner's Jurat*

Petitioner argues the trial court violated the "rule of completeness" by redacting Schaffner's jurat, and by only providing the redacted version of the jurat to the jury. (Dkt. No. 4 at 28.) The redacted jurat presented to the jury described Schaffner's unwillingness to testify on behalf of the prosecution and included statements such as "My family has completely disowned me. And although I am now alone, I feel more at peace than I would by assisting in a false and unjust pursuit of lies." (Lodgment 2 at 248). The trial court redacted portions of the jurat outside of the jury's presence. (Lodgment 2 at 344-350.) In redacted portions of the jurat, Schaffner claims to have spoken with the District Attorney's office and informed the prosecuting attorney that she no longer believed Petitioner had committed the crimes he was charged with. *Id.* at 347. Schaffner claimed she was told that she would be arrested and charged with a crime if she did not follow through "with it." *Id.* Additionally, Schaffner alleged that she was "terrified of being arrested because [she] [wouldn't] assist the D.A.'s office and prosecute and convict[] an innocent person. *Id.* Furthermore, she stated that the prosecutor had a "personal pursuit and vendetta" against her. *Id.* at 348. These statements and allegations relating thereto were redacted because the trial court found them to be "an absolute lie" based on the court's previous dealing with the prosecuting attorney. *Id.* at 347, 349. The trial court also found the accusations had no bearing on the charges against the Petitioner. *Id.*

California's Evidence Code provides that "where part of a [w]riting is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party [w]hich is necessary to make it understood." Cal. Evid. Code § 356. California's evidentiary rule parallels Federal Rule of Evidence 106. *See Beech Aircraft Corp. v.*

*Rainey*, 488 U.S. 153, 172 (1988) ("[W]hen one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible[.]") (emphasis in original); *People v. Chism*, 324 P.3d 183, 226 (Cal. 2014) ("The purpose of Evidence Code section 356 is to avoid creating a misleading impression.") (citation omitted). Petitioner's rule of completeness argument fails for three reasons: (1) Petitioner was not an adverse party that sought to introduce the remainder of the document; (2) Petitioner has never provided the unredacted jurat to this Court for review; and, (3) it is not the province of federal courts to second guess evidentiary decisions made by state trial courts.

First, Petitioner's argument fails because the rule of completeness applies to an "adverse party" requesting the remainder of the document be introduced. *See* Fed. Evid. R. 106; Cal. Evid. Code § 356. Here, however, Petitioner's trial counsel introduced the jurat as redacted. (Dkt. No. 18-11 at 380-381.) Because Petitioner's counsel introduced the jurat, the prosecution was the adverse party with the right to assert that the rule of completeness required the full jurat be introduced. Second, Petitioner has never provided this Court with an unredacted copy of the jurat from which a review of the record could be taken. Third, reviewing the portions of the trial transcript discussing these redactions, this Court ascertains that the excluded portion of the jurat focused on accusations of threats by the prosecutor.[8] Ultimately, the pertinent segments of Schaffner's statement that aided Petitioner's defense were provided to the jury and the trial court's decision to exclude statements that would have confused the issues at trial and created a mini-trial was not error.

---

[8] Given the sparseness of the record and the fact that the Court does not possess the unredacted jurat, the Court is unable to determine when Schaffner alleged these statements were made by the prosecutor.

Lastly, Petitioner's argument must fail because it is not the province of federal courts to second guess evidentiary decisions made by state trial courts. Well settled Supreme Court jurisprudence dictates that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "[F]ailure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief," as "it is certainly possible to have a fair trial even when the state standards are violated." *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). Thus, Petitioner's challenge to the state court's exclusion of evidence under California Evidence Code § 356 is not cognizable on federal habeas review. *See Adams v. Beard*, 2015 WL 5895793, at *6-7 (C.D. Cal. Sept. 2, 2015) (Petitioner's claim that trial court abused its discretion in excluding evidence pursuant to § 356 was not a basis for federal habeas relief); *Miller v. Adams*, 2011 WL 7477034, at *22 (C.D. Cal. Dec. 22, 2011) (holding the trial court's exclusion of evidence under § 356 was not "a basis for federal habeas relief under AEDPA[.]").

In summary, Petitioner's argument regarding improper redaction of the jurat fails, not only because of the procedural bar, but also on the merits. Petitioner has failed to show that any evidence introduced or excluded rendered his trial fundamentally unfair. It follows then, that habeas relief must be **DENIED** on this ground.

## C.    *Brady* Violation

### 1.    Governing Law

This claim, like the previous one, was not presented on direct appeal and is therefore procedurally barred. *See Johnson*, 136 S. Ct. at 1805. The Court considers the merits of this claim, however, as an alternative ground. Petitioner argues the trial court[9]

---

[9] Here, Petitioner alleges the trial court committed a *Brady* violation, whereas in the Superior and Supreme Courts of California Petitioner alleged the prosecution committed the *Brady* violation.

committed a *Brady* violation by withholding a Facebook video from the record, thereby depriving the reviewing courts of the ability to view the video. (Dkt. No. 4 at 29.)  During Petitioner's trial, Schaffner, who was determined unavailable, uploaded a Facebook video in which she discussed the ongoing trial. (Dkt. No. 18-11 at 374-375.)  Petitioner's trial counsel proffered the video into evidence and the trial court denied the request. *Id.* at 376. However, the trial court did mark the video as an exhibit "so a reviewing court has the opportunity to see what was said and when it was said." *Id.*

Respondent argues that Petitioner's claim is procedurally barred. (Dkt. No. 17-1 at 11.)  Respondent also argues the claim must fail because there is no evidence of suppression.  Respondent mistakenly read Petitioner's argument as being that the prosecution withheld the video, whereas Petitioner, in fact, claims the trial court withheld the video. *Id.* at 12.  However, the video was not withheld. As the Superior Court pointed out, the video was received by the court, but excluded as evidence. (Dkt. No. 18-24 at 3.) The court's exhibit list shows that the video was offered by defense counsel on November 17, 2014 and marked as Exhibit Number 42 for identification purposes but was never received in evidence. *Id.*  The court record indicates that while the video was excluded as evidence, it was made part of the record and was available to the appellate court, if requested. *Id.*

The United States Supreme Court in *Brady* held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87.  In order to show a *Brady* violation, three elements must be shown: (1) the evidence must be favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence must be suppressed by the

State, either willfully or inadvertently; and, (3) prejudice must have ensued because of the evidence. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

### 2.    Application

Petitioner's claim fails in two essential respects. First, the Facebook video was not suppressed. Instead, Petitioner had the Facebook video and unsuccessfully offered it into evidence. (Dkt. No. 18-11 at 25.) Secondly, the evidence was not suppressed by the prosecution and *Brady* does not apply to any alleged suppression by the trial court. *Strickler v. Greene*, 527 U.S. at 281-82 (1999) ("There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been *suppressed by the State*, either willfully or inadvertently; and prejudice must have ensued.") (emphasis added).

Notwithstanding the fact that this claim is procedurally barred, the claim is meritless. Accordingly, habeas relief on this ground is **DENIED**.

### D.    Ineffective Assistance of Counsel

Petitioner argues that he received ineffective assistance of counsel at the trial and appellate level. (Dkt. No. 4 at 31.) Petitioner alleges his trial counsel performed, and continues to perform, deficiently because Petitioner's trial counsel has not produced the case discovery files to Petitioner upon Petitioner's request. Specifically, Petitioner seeks to obtain Schaffner's medical records which were referenced at the preliminary hearing. Petitioner argues he has a constitutional right to obtain all the files, and that his counsel is depriving him of that right by not turning over the files as requested. *Id.* Further, Petitioner argues he received ineffective assistance of counsel on the appellate level because his counsel did not raise the evidentiary claims or the *Brady* claim on direct appeal. Petitioner emphasizes this argument because his petition for writ of habeas corpus was denied by the

Superior Court for failure to raise these additional claims in a direct appeal.

Respondent argues that Petitioner did not present any deficiencies worthy of an ineffective assistance of counsel claim. (Dkt. 17-1 at 14.) While Petitioner argued to the Superior and Supreme Courts of California that his attorneys should have sought to have Schaffner produce hospital reports, (Dkt. No. 18-23 at 12), Petitioner has slightly altered his argument in front of this Court. (Dkt. No. 4 at 29.) The Superior Court, however, denied Petitioner's arguments, noting that appellate counsel has the "right and duty to review a case and present only the strongest claims," appellate counsel acted appropriately in advancing only the strongest claims in Petitioner's direct appeal. (Dkt. 18-4 at 5.)

Petitioner has failed to set out arguments in the required legal framework to show an ineffective assistance of counsel claim; nonetheless, because Petitioner filed his FAP *pro se*, this Court may interpret Petitioner's arguments in a way that fits the legal framework. *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001).

### 1. Governing Law

United States Supreme Court law governing ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Williams v. Taylor*, 529 U.S. 362, 363 (stating it is beyond question that *Strickland* is the "clearly established" law governing ineffective assistance of counsel claims). There, the United States Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims. In order to establish that his trial counsel was ineffective under *Strickland*, a challenger must show: (1) his trial counsel's performance was deficient; and, (2) trial counsel's deficient performance prejudiced his defense. *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) (citing *Strickland*, 466 U.S. at 688, 694).

To establish deficient performance, Petitioner must show that "counsel made errors so serious . . . that counsel's representation fell below an objective standard of

reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. The proper inquiry is whether decisions made by counsel were reasonable; the court does not inquire as to what counsel could have done differently. *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). When making this inquiry, counsel is strongly presumed to have rendered adequate assistance and used reasonable professional judgment when making decisions. *Strickland*, 466 U.S. at 690. Ninth Circuit precedent makes clear that "[r]eview of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *Hensley v. Crist*, 67 F.3d 181, 184 (9th Cir. 1995). Furthermore, when the court reviews the reasonableness of counsel's performance, the review is conducted from counsel's perspective at the time of the alleged error, in light of the totality of circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

Allegations of ineffective assistance of counsel must be more than conclusory, in that they must be supported by a statement of specific facts which warrant habeas relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994); *see also Strickland*, 466 U.S. at 690 (a petitioner "making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment"); *Ortiz*, 149 F.3d at 933 (rejecting ineffective assistance of counsel claim where petitioner failed "to indicate how he was prejudiced by counsel's failure . . . "); *Cranford v. Sumner*, 672 F. Supp. 453, 457 (D. Nev. 1987) ("Aside from the bald allegation that his attorney should have raised this claim but did not, the petitioner has failed to demonstrate how his attorney's performance fell below the reasonable level of professional competence required by Strickland").

Though the defendant has the ultimate authority to make fundamental decisions regarding whether to plead guilty, waive a jury trial, testify on his own behalf, or take an

3:17-cv-0061-GPC-PCL

appeal, *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1 (1977) (Burger, C.J. concurring), an indigent defendant has no right to compel appointed counsel to press nonfrivolous points if counsel, as a matter of professional judgment, decides not to present them. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Requiring such would "seriously undermine[] the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Id.* In order to merit habeas relief under the AEDPA, Petitioner must make the additional showing that the state court's ruling that counsel was not ineffective constituted an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d)(1).

"[A]ppellate counsel (and, by analogy, habeas corpus counsel as well) performs *properly* and *competently* when he or she exercises discretion and presents *only* the strongest claims instead of every conceivable claim." *In re Robbins*, 959 P.2d 311, 338 (Cal. 1998) (emphasis in original) (citing *Jones v. Barnes*, 463 U.S. 745, 752 (1983)). The strength of the evidence of guilt presented at trial may be considered when analyzing any failing of prior counsel. *Id.* "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982). Notably, the Ninth Circuit has held that a convicted defendant has no Sixth Amendment rights on appeal because appellate review is not required of states. "If, however, the State elects to furnish an avenue for appeal, its procedures must comport with the Due Process and Equal Protection Clauses of the Fourteenth Amendment." *Tamalini v. Stewart*, 249 F.3d 895, 902 (9th Cir. 2001).

### 2.    Application

As the basis for his ineffective assistance of counsel claim against trial counsel, Petitioner summarily asserts that trial counsel is "not responding or cooperating" with Petitioner's attempts to obtain the case file. Petitioner claims "trial [counsel] was the last known owner of the Petitioner's case discovery files" and failed to deliver copies to

Petitioner upon termination of representation. (Dkt. No. 4 at 31.) Petitioner fails to detail any evidence of his attempts to obtain his case file from trial counsel. The Court is unable to conclude Petitioner has alleged anything more than conclusory claims, (Dkt. No. 4 at 31.)

It appears that Petitioner is suggesting that his trial counsel violated California Rule of Professional Conduct 3-700 whereby an attorney is required to return "all client papers and property"—including, "correspondence, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other items reasonably necessary to the client's representation—to the client if the client so requests. California Rule of Professional Conduct 3-700(D). However, the Petitioner has failed to demonstrate that he requested the return of any papers or evidence.

In addition, Petitioner's claim fails for a failure to exhaust. A claim is not exhausted unless the petitioner has presented the state court the same operative facts and legal theory upon which his federal habeas claim is based. *Bland v. California Dep't of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994). Petitioner presented his ineffective assistance claim to the Superior and Supreme Courts of California based on trial counsel's failure to introduce the medical records. In Petitioner's FAP filed with this court, Petitioner bases his claim on trial counsel's failure to *provide* him with the medical records. These grounds present a different factual theory than presented below leading to the conclusion that this redrawn claim was never exhausted at the state court level.[10]

Here, Petitioner has also failed to show grounds for relief regarding the alleged

---

[10] At most, Petitioner may file a motion to compel Respondent to produce his case file, including all discovery. *See Viray v. Donat*, 2008 WL 2180106, *1 (Nev. May 22, 2008) (where petitioner had filed a motion to compel the state court record and "'other relevant records' contained in the Public Defender's file" at the state level, the court directed the Petitioner to peruse the state court record lodged by respondent in the federal district court and "to the extent petitioner[sought] additional portions of the record, he may file a motion . . . for respondents to produce the same")

ineffective assistance of his appellate counsel. As discussed above, both the *Brady* and the evidentiary claims that underpin this claim are meritless and, as such, Petitioner has failed to demonstrate deficient performance by appellate counsel. *See Baumann v. U.S.*, 692 F.2d 565, 572 (9th Cir. 1982) ("The failure of appellate counsel to raise a meritless claim is no grounds for an ineffective assistance of counsel claim.").

For these reasons, Petitioner has failed to properly allege an Ineffective Assistance of Counsel claim for his trial counsel or his appellate counsel. Accordingly, habeas relief on this ground is **DENIED**.

## V. CERTIFICATE OF APPEALABILITY

Rule 11 of the Federal Rules Governing § 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability should be issued only where the petition presents "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability "should issue when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right, and that jurists of reason would not find it debatable whether the district court was correct in its procedural ruling. *See id.* Accordingly, the Court **DENIES** a certificate of appealability.

3:17-cv-0061-GPC-PCL

# VI. CONCLUSION

For the reasons set forth above, the Court **ADOPTS in Part** the Magistrate Judge's Report and Recommendation, **DENIES** Petitioner's Petition, and **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

Dated: July 26, 2018

Hon. Gonzalo P. Curiel
United States District Judge

3:17-cv-0061-GPC-PCL